1808.

Saturday,
Dec. 24th.

EMERICK *against* HARRIS.

This court has authority to decide upon the constitutionality of an act of the state legislature.

The 20*l.* act is not unconstitutional.

THIS was a certiorari to the alderman's court of *Philadelphia.* The record shewed an action of debt by *Emerick* against *Harris,* in which the defendant had suffered judgment to go by default for 11*l.* 6*s.* 0*d.* and the costs; and the only objection to the proceeding was, that the alderman's court had no jurisdiction in causes above 10*l.*

Before the adoption of the present constitution of *Pennsylvania* in 1790, justices of the peace, by an act passed the 5th *April* 1785, 2 *St. Laws,* 304. had jurisdiction in cases of debt or demand not exceeding 10*l.*; but by a law passed the 19th *April* 1794, 3 *St. Laws,* 736. that jurisdiction was increased, in cases of the same kind, to an amount not exceeding 20*l.* This law directed, that if any person should bring suit in other manner than was provided by the act, and should not recover more than 20*l.* he should not have judgment for any costs; at the same time it provided, that either plaintiff or defendant in a suit brought before a justice for a demand above 10*l.* might before judgment elect to have the cause tried in the common pleas, the defendant, if he was the party electing, giving security in the nature of special bail, or to enter a common appearance, accordingly as the cause originated by capias or summons; and it entitled either party, even after judgment, if the amount exceeded 5*l.* to appeal to the common pleas, upon giving security to answer costs, to prosecute the appeal with effect, &c. The same jurisdiction, thus modified, was given to the alderman's court, which proceeded without the intervention of a jury.

The case turned upon the validity of this law, which was alleged to be unconstitutional and void, because it violated the 6th section of the 9th article of the constitution, which says " that trial by jury shall be as heretofore, and the right there-" of remain inviolate."

It was argued at *September* and *December* terms 1803, by *M'Kean* (attorney general), *Ingersoll,* and *E. Tilghman,* for the defendant, and by *Hopkinson* and *Rawle,* for the plaintiff.

The arguments for the plaintiff, were in substance, 1. That this court had no authority to declare an act of the legislature to be unconstitutional. That such a power was not expressly given to the judiciary by the constitution; and without it, being at most but a coordinate branch of the government, they could not defeat or control the legislature, by vacating laws, of the constitutionality of which the one had no better right to judge than the other. That in fact neither had the right; the people being the safeguard of the constitution, and holding in their hands the remedy for all injuries to that compact, in the power of dismissing bad servants. That if the court took the power by implication from either their oath of office, or the nature of their duties, so might the common pleas, the alderman's court, justices of the peace, and even many executive officers, until at last there would be no person too illiterate or too humble to correct the legislature of the state, and to arrest the execution of the laws. 2. That the law of 19th *April* 1794 was not contrary to the constitution. That the legislature had an express right by that instrument, to organize new judicial tribunals; and that so long as the trial by jury was preserved through an appeal, the preliminary modes of obtaining it might be varied at their will and pleasure. That to deny them this right, was to prohibit the minutest change in any of the formal process and rules by which jury trial was obtained and regulated. That by this law the trial was open to the parties at their own election, or by appeal; and it rested with them, whether to remain before the magistrate, or to proceed in the old way. That the only difficulty was about the costs; and that therefore the question of constitutionality came to this, whether the legislature had a right to abridge, or to abolish costs, in cases wherein they were recoverable before the constitution was adopted. That this was almost too plain for argument, and was a matter upon which a multitude of laws had been made since that time, without a suggestion of their impropriety. That it was always a question of policy for the government, and not of right in the party; some parties paying none, others paying double or treble costs according to the nature of the case; a proportion sometimes existing between them and the damages recovered, sometimes not; the whole being an arbitrary system, of the change of which, or even its extinction, no one had a right to complain.

For the defendant the arguments were, 1. That the constitu-tion was the paramount law of the land; and that all acts of the legislature which impugned its provisions, were not merely voidable, but absolutely void; they were not laws at all, as they wanted the vital efficacy of a law. That if an act, deriving its authority from a supposed law, should come before the court, there could be no doubt of the court's power to defeat the act, if the law was found not to exist; which was precisely the case where an act was founded upon a law repugnant to the consti-tution. That the question was between conflicting laws, one of which must always stand, and the other give way; and the whole point was, whether the court, who could execute but one of the laws, had a right to decide whether there was a conflict, and which should give way. That it was too plain for debate, that when there is a paramount law by which the court is at all events bound, it must have a right to say whether a law, which has no authority upon them except it conform to the para-mount law, does or does not conform to it. That the judiciary owe a duty to the constitution above that which they owe to the legislature; and where the one says one thing and the other a contrary thing, they must adhere to the first, which in effect is deciding against the second. That finally the right of the court had been repeatedly affirmed by judicial decisions; as in *Vanhorne* v. *Dorrance* (*a*), *Hayburn's case* (*b*), *Hylton* v. *The United States* (*c*), and many others in our own state. 2. That the constitution, by directing that trial by jury should be as heretofore, and the right thereof remain inviolate, had inter-dicted the legislature from abolishing or abridging this right in any case, in which it had existed before the constitution. That a prohibition to do this directly, was a prohibition to do it in-directly, either by deferring the decision of a jury until one, two, or more previous stages of the cause had been passed, or by clogging the resort to that tribunal by penalties of any kind, either forfeiture of costs, security upon appeal, or delay. That the power to obstruct at all, implied a power to increase the obstructions, until the object became unattainable; and that the instant the enjoyment of the right was to be purchased by sa-crifices unknown before the constitution, the right was violated, and ceased to exist as before. That the question was not whe-

(*a*) 2 *Dall.* 304.    (*b*) 2 *Dall.* 409.    (*c*) 3 *Dall.* 175.

ther the legislature had a right to take away costs altogether, but whether they could make the loss of them a penalty for demanding a right secured by the constitution. That all encroachments upon constitutional rights were in the first instance minute; that they increased in magnitude, as the boldness of the usurping power increased by the acquiescence of the citizen; and that therefore it was the duty of the judiciary to detect and resist the usurpation at the outset.

*Cur. adv. vult.*

1808.

EMERICK
*v.*
HARRIS.

On this day the judges delivered their opinions.

YEATES J. On the first question argued in this case, I have no doubt whatever, that this court is vested with the legitimate power of deciding on the constitutionality of an act of the legislature. The judicial authority of this state comprehends the exercise of this right as well on principle as precedent.

The constitution, being the act of the people, and the compact according to which they have agreed with each other that the government which they have established shall be administered, is a law to the government; and a sacred reverence for it is an indispensable requisite in the character and conduct of every public agent. 1 *Tuck. app. to Black. Comm.* 29.

It cannot be denied that an anxious desire is expressed by the people in the formation of the constitution of the *United States*, and of this state, to keep the powers of the legislative, executive, and judicial departments, distinct and independent of each other. They are separate and coordinate branches of the government, and are expressly recognised as such, by a special enumeration of their respective powers and rights. By the 6th article of the constitution of the *United States*, " the " senators and representatives in congress, and the members of " the several state legislatures, and all executive and *judicial* " officers both of the *United States* and of the several states, shall " be bound by oath or affirmation to support the constitution." This is further enforced by a law of the *United States* passed on the 1st *June* 1789. 1 *U. S. Laws* 26. By the 8th article of the constitution of this state, " members of the general assem- " bly, and all officers, executive and *judicial*, shall be bound by " oath or affirmation to support the constitution of this com- " monwealth, and to perform the duties of their respective " offices with fidelity." On what grounds are these provisions

made, unless, as judge *Tucker* observes, the constitution regards the judicial exposition of that instrument, as the bulwark provided against the undue extension of legislative power? 1 *Tuck. app.* 288. The judiciary power, far from being an emanation from the executive, is intended by the *American* constitutions as a counterpoise or check to its excesses, and those of the legislature. 3 *Tuck. Black.* 24. *note* 2. See *Federalist, No.* 78.

The 10th section of the 1st article of the constitution of the United States provides, among other things, that " no " state shall pass any bill of attainder, *ex post facto* law, or law " impairing the obligation of contracts;" and the 17th section of the 9th article of the state constitution expressly directs, that " no *ex post facto* law, nor any law impairing contracts shall be made;" and the 18th section asserts that " no person shall be attainted of treason or felony by the legislature." Put a strong case, which for the honour of human nature we can scarcely suppose the possibility of: that the legislature should, under very peculiar circumstances, (as in the case of sir *John Fenwicke* in *England*) pass an act of attainder against an obnoxious citizen for treason, and the attorney general should demand of the court to award execution. Will it be said that we are compellable to pass such sentence, against the express words, and plain meaning of both constitutions, and the tenor of our oaths of office? Would it not be our bounden duty to refuse to pass the sentence, and to put the party on his trial according to the ordinary course of law, as was done by the judges of the general court in *Virginia*, on an Act passed to attaint *Josiah Phillips* in *May* 1778, unless he should render himself to justice within a limited time? 1 *Tuck. Black. app.* 293.

The obligation of an oath imposed upon us to support both constitutions would be nugatory, if it were dependent upon either of the other branches of the government, or in any manner sub-ject to their control; since such control might operate to the destruction instead of the support of either constitution. Nor can it escape observation, that to require such an oath on the part of the judges on the one hand, and yet suppose them bound by acts of the legislature which may violate the constitution, they have sworn to support, carries with it such a degree of impiety as well as absurdity, as no man who pays any regard to the obligations of an oath, can be supposed either to contend for

or defend. 1 *Tuck. Black. append.* 355. My idea of the obligations arising from the oath to *support* the constitutions of the United States and this state, prescribed by each of those solemn instruments, is plainly this: Whether the party moves in the sphere of the *legislative, executive,* or *judicial* department, he is bound to maintain and uphold those compacts made with the people. Possessed of a portion of the lawmaking power, he is interdicted from exercising his legislative right in such a manner, as may injure or impair the sources from which his authority is derived. In the executive branch, he shall carefully avoid every act which may have that injurious tendency. In the judiciary, he shall fairly and patiently compare legislative acts with both constitutions, and honestly pronounce upon them as his judgment and conscience shall dictate, without regarding consequences. A due conformity to the oath of office in a judge, creates duties beyond those of passive obedience. It requires the active energies of the mind to determine on the constitutionality of those laws, which may be brought before him in judgment; and in his decisions he shall *protect* those paramount laws which he has sworn to *support.*

Every one can readily see that the judges may be thrown into a delicate situation by the exercise of this constitutional right. They are subjected to the lawmaking power by impeachment, or by removal for causes which do not furnish ground of impeachment; and may therefore in one sense be supposed to owe their existence to the lawmaking power. I can only answer, the constitution of this state contemplates no wilful perversion of the power of impeachment or removal; and it is to be hoped, for the honour of human nature, that such instances will seldom occur. Whenever it does happen, the judge must derive consolation from the integrity of his own mind, and the honest feelings that he has discharged his duty with fidelity to the government. When he accepted his commission he knew the tenure of his office; and it is much better that individuals should suffer a private inconvenience, than the community sustain a public injury. Posterity sooner or later will do him complete justice.

The power of the judiciary branch to pronounce against the validity of the laws of the union and of individual states, is taken for granted by the act of congress of *Sept. 24th* 1789, *sec.* 25. In certain cases where is drawn in question the

1808.

EMERICK
v.
HARRIS.

*validity* of a treaty or *statute* of, or an authority exercised under, the *United States*, and the decision is against their validity; or where is drawn in question the *validity of a statute* of, or an authority exercised under, any *state, on the ground of their being repugnant to the constitution,* treaties, or laws of the *United States*, and the decision is in favour of such their validity; or where is drawn in question the construction of any clause of the constitution, or of a treaty, or statute of, or commission held under the *United States*, and the decision is against the title, right, privilege, or exemption, specially set up or claimed by either party under such clause of the said constitution, treaty, statute, or commission, the final judgment or decree in any suit in the highest court of law or equity of a state, may be reexamined and reversed or affirmed in the supreme court of the *United States,* upon a writ of error. 1 *U. S. Laws* 64.

On this point there is no dearth of precedents, either in the courts of the union, or of our own state. In the case of the Invalid pensions, the judges of the supreme court of the *United States* in 1791 refused to execute an act of congress. 2 *Dall.* 410. 1 *Tuck. Black. app.* 5. In *Hylton, plaintiff in error,* v. *The United States,* the sole point in question was the constitutionality of the law of congress passed *June 5th* 1794, laying a duty on carriages for the conveyance of persons. 3 *Dall.* 171. In *Vanhorne's lessee* v. *Dorrance,* Judge *Patterson* determined the confirming act of *Pennsylvania* of 28th *March* 1787 to be unconstitutional and void. 2 *Dall.* 304. In the courts of this state, in *Austin's Lessee* v. *The Trustees of the University of Pennsylvania,* a law of this state passed on the 6th *August* 1784 was adjudged to be unconstitutional, in *April* term 1793. In *Respublica* v. *Cobbett, December* term 1798, *Respublica* v. *Duguet, December* term 1799, on a case stated respecting the wooden buildings in the city, the constitutionality of certain laws was fully argued; and in *Respublica* v. *Franklin and Jenkins,* the constitutionality of the intrusion Act of the 11th *April* 1795 was debated at great length, both in the circuit court, and here in *December* term 1802. Indeed until lately there was but one opinion on this subject; it being uniformly conceded by the bar, and held by the bench, that the courts of justice must necessarily possess and exercise the power of judging of the constitutionality of all laws, brought before

them judicially. At the same time I readily admit that the judicial authority ought not to declare a law to be unconstitutional, unless in cases perfectly plain and clear. It cannot be denied that the entertaining an argument on the constitutionality of a legislative act by the judiciary, implies necessarily in itself a power to judge and determine on its validity, on a fair comparison of it with the powers granted to the former branch of the government, by a solemn act of the people, sanctioned by the oaths of those who are delegated to act in the three branches.

The opinion of the supreme court of the *United States* between *Marbury* v. *Madison*, on the motion for a rule on the secretary of state of the *United States* to shew cause why a mandamus should not issue, commanding him to cause to be delivered to the plaintiff his commission as justice of the peace in the district of *Columbia*, has been published in 1 *Cran.* 137. since I drew up this opinion. The act to establish the judicial courts of the *United States*, authorized the supreme court " to " issue writs of mandamus, in cases warranted by the principles " and usages of law, to any courts appointed, or *persons holding* " *office*, under the authority of the *United States*." 1 *U. S. Laws* 58. *sec.* 13. The court adjudged that this was a plain case for a mandamus either to deliver the commission or a copy of it from the record. 1 *Cran.* 173. But the power of the supreme court being limited by the constitution, in point of original jurisdiction, " to cases affecting ambassadors, other " public ministers and consuls, and those in which a state " shall be a party," it was adjudged that the clause in the act of congress was unconstitutional, and could not be executed by the supreme court. The chief justice has demonstrated that " courts as well as other departments are bound by the consti- " tution, and that the essential principle of all written constitu- " tions is that a law repugnant to that instrument is void." *p.* 180. " It is emphatically the province and duty of the judi- " cial department to say what the law is. Those who apply the " rule to particular cases, must of necessity expound and inter- " pret that rule. If two laws conflict with each other, the courts " must decide on the operation of each." *p.* 177. I feel that I should be guilty of injustice to the elaborate argument of the chief justice, were I to quote detached parts of his system of reasoning on this subject. I have no hesitation in saying for

*Margin notes:* 1808. EMERICK *v.* HARRIS.

myself, that his observations have strengthened and confirmed the sentiments I have ever entertained of the indispensable obligation of written constitutions upon judiciary characters. See 1 *Wils.* 460.

When the convention declare in the 5th section of the bill of rights, that " trials by jury shall be *as heretofore*, and the " right thereof shall remain inviolate," I do not conceive that any restriction is thereby laid on the legislative authority, as to erecting or organizing new judicial tribunals in such manner as may be most conducive to the general weal, on a change of circumstances effected by a variety of causes. This appears plain to me from the 5th article of the constitution, which vests the judicial power of the state " in a supreme court, courts of oyer and " terminer, and sessions of general gaol delivery, common pleas, " orphan's court, register's court, sessions of the peace, justices " of the peace, and in *such other courts* as the legislature may " from time to time establish." But it is equally obvious to my understanding, that the legislature cannot constitutionally impose any provisions substantially restrictive of the right of trial by jury. They may give existence to new *forums;* they may modify the powers and jurisdiction of former courts, in such instances as are not interdicted by the constitution from which their legitimate powers are derived. Still, the sacred inherent right of every citizen, a trial by jury, must be preserved. "*It shall remain inviolate*, as heretofore.*"

When the present state constitution was formed, the 10*l.* act which passed on the 5th *April* 1785 was in full force, and must be presumed to have been in the contemplation of the convention, who by the words " as heretofore" virtually confirmed it. The law now in question was enacted at a subsequent period on the 19th *April* 1794; and is therefore subject to legal discussion. It extended the jurisdiction of justices of the peace to 20*l.* With the wisdom, sound policy, or expedience of that law, this court have nothing to do. These are matters purely of legislative deliberation and cognisance. I cannot avoid lamenting that the original jurisdiction of suits embraced by the act is exclusively assigned to a single justice, and only an appellate jurisdiction reserved to a jury. But it must be admitted that the right of trial by jury is not taken away, though the party may be subjected to some inconvenience in making his election. The law therefore appears to me not to be that *plain and clear case,*

in which I should feel myself authorized to pronounce on its invalidity, as a deviation from the constitution; and therefore I find myself bound to give judgment for the plaintiff.

SMITH J. concurred.

BRACKENRIDGE J. began by saying that the case involved two questions, 1. Whether this court had authority to decide upon the unconstitutionality of an act of assembly; and 2. Whether the particular law in question was against the constitution. He said that the first was a *vexata quæstio*, very delicate and embarrassing in its nature; that he had made out his observations at a considerable length, in which the difficulties of the question were stated; but that at present he did not think it necessary to read them. He then proceeded upon the second question as follows:

Assuming it as a principle, that a case may occur where it may be the duty of the judiciary to pronounce upon an act of the legislature as contrary to the constitution, and where they may be called upon, as in the present instance, to arrest the execution of it, we come to inquire whether the act in question is of that nature.

By the constitution, art. 10. sect. 1., " the judicial power of " this commonwealth shall be vested in a supreme court, in " courts of oyer and terminer and general gaol delivery, in a " court of common pleas, orphan's court, register's court, and " a court of quarter sessions of the peace for each county, *in* " *justices of the peace*, and in such other courts as the legis- " lature may from time to time establish." From a specification of the different tribunals, it would seem to be inferible, that the distribution of the jurisdiction shall be according to the nature of the forum. That of justices of the peace did not originally extend to civil cases. But by an early act of the legislature of the province, in the year 1700, civil jurisdiction was given under the title of " An act for determining debts under 40s." This act continuing five years was repealed, but supplied in 1715. From the jurisdiction of the justices, under this act, was excepted " debts for rents, or contracts for real estates." By an act of *March* 1st 1745 the jurisdiction was extended to " actions for debt, or other demand for the value of 40s. and " upwards, and not exceeding 5l." with an appeal under certain

1808.

EMERICK

*v.*

HARRIS.

regulations to the court of common pleas. This appeal has been construed to extend only to demands above 40*s.* Under this act there is an exception " of debt for rent, debt upon bond for performance of covenants, actions of replevin, or upon any real contract, actions of trespass on the case for trover and conversion or slander, actions of trespass for assault and battery or imprisonment, actions where the title of lands shall anywise come in question. "

Such was the jurisdiction exercised at the framing of the constitution under the commonwealth in 1776; in which constitution, there is nothing that has a direct reference to the powers of the justices of the peace, or from which we can collect, that the jurisdiction which has been given by these acts of assembly, and exercised under the province, was provided against; unless it be in that article of the declaration of rights, " that in " controversies respecting property, and in suits between man " and man, the parties have a right to trial by jury, which ought " to be held sacred;" or in that clause of the constitution " trials " shall be by jury as heretofore." Under this constitution, by an act of the legislature, *Jan.* 28th, 1777, entitled " an act " to revive and put in force such and so much of the late laws " of the province as is judged necessary to be in force in this " commonwealth," we find no exception of those laws giving jurisdiction to the justices of the peace in controversies respecting property, and in suits between man and man; whence it is inferible, either that the legislature did not attend to the nature of these laws, giving jurisdiction to the justices " in " suits between man and man;" or that they did not consider them as inconsistent with the provisions of the constitution. These provisions are the same, in substance, with those of the charter of liberties granted by *William Penn* to the first settlers of the province, in which it is declared " that all trials shall be " by twelve men, and, as near as may be, peers, or equals, and " of the neighbourhood, and without just exception;" the laws agreed upon in *England* in 1682. And yet in the face of this provision, jurisdiction to the justices in civil matters had been originally given, and continued.

Under the constitution of the commonwealth, by an act of the 23d *September* 1784, supplied by an act of the 5th *April* 1785, the jurisdiction of the justices in civil matters was extended to debts and demands not exceeding 10*l.*; subject to like

appeals, and under similar regulations, restrictions, and excep-        1808.
tions as in the preceding act of *March* 1745.                          ————
The framers of the present constitution had these acts before         EMERICK
them, and the exercise of this jurisdiction within their know-            *v.*
ledge; and yet we find no direct exclusion of this jurisdiction,        HARRIS.
and nothing more than what may be collected from the like
words with those before used: " trials shall be by jury as here-
" tofore." For it would not seem that the variation in the
words " trials shall be by jury as heretofore," as in the con-
stitution of 1776, and " trials by jury shall be as heretofore,"
as in the constitution of 1790, would warrant the conclusion
that a change of meaning was intended; or that any exclusion
can be drawn from the one expression more than the other,
with a reference to the jurisdiction of the justices.

It is under this constitution (1790) that we come to the act
before us, of *April* 1794, by which the jurisdiction is extended
to 20*l.*, subject to an appeal in matters above 5*l.*; and with ex-
ceptions as in the act preceding. The most material particular
in this act, is the taking away the appeal in a demand above
40*s.*, and not exceeding 5*l.*

By an act of the 23d *September* 1784, extending the juris-
diction of the justices of the peace to actions of debt or de-
mand of the value of 5*l.* and not exceeding 10*l.*, as in the case
of debts of the value of 40*s.* and not exceeding 5*l.*, an appeal
was excluded. This by an act of the 5th *April* 1785 was re-
pealed, with a preamble, " that whereas the act entitled, &c.
" in not allowing trial by jury in suits or actions for debts, and
" other demands, cognisable under the same by one justice of
" the peace, *is contrary to the spirit of the constitution of this*
" *state,*" &c. It might be said on the same ground, that the
taking away the appeal in the act before us in demands above
40*s.* and not exceeding 5*l.*, in which case it was before allowed,
is contrary to the spirit of the constitution.

It is of less moment that under this act the jurisdiction of
the justices is extended to a demand of 20*l.*; yet it may be said
to be " contrary to the spirit of the constitution." For though
an appeal is saved in debt or demand above 5*l.*, yet there is in
the first instance a privation of the trial by jury. It is true there
is weight in the consideration expressed in the preamble of the
act, " the lessening in the value of money." But it cannot be
in the spirit of the constitution, but contrary to it, to extend the

1808.

EMERICK
v.
HARRIS.

jurisdiction of the justices of the peace, ad libitum, and to any extent, even allowing the appeal. Yet it is one thing to be contrary to the spirit of the constitution, and another thing to be in direct violation of it. " Trial by jury shall be as heretofore." But trial by jury *heretofore*, had not been known in the forum of the justice. And it could not be with a view to secure the jury trial in this forum, that the provision was introduced. It must have been to secure the trial in the courts where it had existed; or to secure it in those courts which " the legislature " may from time to time establish." But in the distribution of judicial power to the justices of the peace where the trial by jury does not exist, what is given more to the cognisance of the justice, is making less the jurisdiction of the courts where the jury trial does exist; and is indirectly taking away the trial by jury from the subject of the jurisdiction given to the justice. Yet this is but an indirect invasion; and the difficulty is to say where it may begin to be an invasion, unless it is assumed as a principle that it cannot be extended beyond what it was at the time of framing the constitution; and this, taking into view the history and progress of the jurisdiction, would seem to be assuming more than is justifiable. If then we are not arrested at the precise point where the matter stood at the framing of the constitution, with respect to an enlargement of the jurisdiction of the justice of the peace, how far shall we go? Where shall we stop? Is it competent to the judiciary to fix this point? Is it not in the nature of it, a matter of discretion, a question of expediency? And must it not be left to the legislature? What might be done in an extreme case which might be imagined, an accumulation of jurisdiction in a justice of the peace far beyond any thing like what had before existed, it is not necessary to say; for the present would not appear to me to be such a case, nor can it warrant the judiciary to exercise an act of such paramount and delicate authority as to interfere. My opinion therefore must be for the plaintiff in the suit before the justice.

It will be observed that I have confined myself to the act giving jurisdiction to the justice of the peace in demands not exceeding 20*l*., under which the jurisdiction in the case before us arises; and which act, being of the 19th *April* 1794, is an extension of the act of *March* 1745, and subject to, and under every regulation, restriction and exception in that act. The exceptions in that act with respect to the subject of contro-

versy, debt for rent, debt upon bonds for performance of cove- **1808.**
nant, actions of covenant, replevin, &c. have been stated, and EMERICK
the jurisdiction in the act in question being subject to the like *v.*
exceptions, it has not come in my way, in considering the case HARRIS.
before us, to take notice of what might be the question in a case
where the subject of jurisdiction was enlarged as to the cause
of action, as well as to the quantum of the demand; or as to
the cause of action itself. I take it to be of more moment that
the jurisdiction be confined as to the subject of controversy,
than as to the quantum of demand, or at least as much; for the
principle of law, which may come in view and be disposed of
by the justice, may be of as much consequence as the value of
the property. I should feel myself under more difficulty to re-
concile the enlarging the jurisdiction as to cause of action,
than as to quantum of demand. But there is nothing in the
act before us which goes beyond debt, or contract, or actions not
excepted in the act of *March* 1745.

TILGHMAN C. J. gave no opinion, not having been upon the
bench when the cause was argued. But he said he had under-
stood from the late chief justice Shippen, that he agreed with
the other members of the court.

Judgment affirmed.