HOLMES v STATE OFFICERS COMPENSATION COMMISSION

1. CONSTITUTIONAL LAW—STATES—OFFICERS—STATE OFFICERS COM-
   PENSATION COMMISSION—AUTHORITY OF COMMISSION—SALARIES
   —EXPENSE ALLOWANCES—FRINGE BENEFITS—SEPARATION OF
   POWERS—STATUTES.

   The constitution limits the authority of the State Officers Com-
   pensation Commission to determination of salaries and expense
   allowances; use of the word "compensation" in a statute which
   implements the constitutional provision cannot increase the
   commission's authority to include determination of fringe bene-
   fits because constitutional provisions are superior to statutory
   provisions and it would be an unlawful delegation of legislative
   power under the doctrine of separation of powers to grant this
   authority to the commission by statute (Const 1963, art 3, § 2,
   art 4 § 12; MCLA 15.217).

2. STATES—LEGISLATORS—GOVERNOR—LIEUTENANT GOVERNOR—SU-
   PREME COURT JUSTICES—SALARIES—FRINGE BENEFITS—STATE
   OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMIS-
   SION.

   Fringe benefits such as insurance, pensions, and official resi-
   dences are factors which the State Officers Compensation Com-
   mission may consider when deliberating on and arriving at
   specific determinations of salaries of members of the Legisla-
   ture, the Governor, the Lieutenant Governor, and Justices of
   the Supreme Court, even though the commission lacks author-
   ity to establish the amount and type of fringe benefits.

3. CONSTITUTIONAL LAW—STATES—OFFICERS—EXPENSE ALLOWANCES—
   STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF
   COMMISSION.

   The constitution permits the State Officer's Compensation Com-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 7–9, 12, 13] 63 Am Jur 2d, Public Officers and Employees §§ 364–
   366.
   72 Am Jur 2d, States, Territories and Dependencies §§ 17, 56.
[3–6, 10, 11, 14, 15] 63 Am Jur 2d, Public Officers and Employees
   §§ 387–390.
[16, 17] 63 Am Jur 2d, Public Officers and Employees § 391.

mission to determine expense allowances for normal reimbursable personal expenses such as food, lodging and travel costs incurred by an individual in carrying out the responsibilities of a state office (Const 1963, art 4, § 12).

4. STATES—OFFICERS—STATE AUTOMOBILES—STATE AIRPLANES— CHAUFFEURS—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION—EXPENSE ALLOWANCES.

The State Officers Compensation Commission cannot grant or deny the use of a state-owned automobile or airplane, however, the commission when determining expense allowances may consider whether the state official has available to him a state-owned automobile or airplane; the commission cannot consider whether the official has a chauffeur provided by the state since this is not a reimbursable personal expense.

5. CONSTITUTIONAL LAW—STATES—OFFICERS—EXPENSE ALLOWANCES— PERSONAL EXPENSES—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION.

The constitution does not permit the State Officers Compensation Commission to determine expense allowances for facilities, office and staff expenses which are not expenses personal to an officeholder; the commission cannot consider facilities, office and staff expenses when determining expense allowances since these expenses are not sufficiently related to personal expenses to be relevant to the determination (Const 1963, art 4, § 12).

6. STATES—OFFICERS—EXPENSES—EQUIPMENT AND SUPPLIES—LEGISLATORS—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION.

The State Officers Compensation Commission cannot grant, deny, or consider expenses paid to state legislators as members of legislative committees, or expenses paid to legislators or other state officials on special assignments or missions; the commission has no authority to grant or deny office and staff equipment and supplies to state officials.

7. STATES—GOVERNOR—LIEUTENANT GOVERNOR—SUPREME COURT JUSTICES—LEGISLATORS—SALARIES—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION—SUM CERTAIN.

Determinations of the salaries of members of the Legislature, Governor, Lieutenant Governor and Supreme Court Justices are within the authority of the State Officers Compensation Commission where the determinations are of a sum certain without provision for adjustment; a determination that the

salary of a state legislator shall be reduced by a $950 pension revision was beyond the authority of the commission.

8. STATES—LEGISLATORS—SPEAKER OF THE HOUSE—SALARIES—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION.

The State Officers Compensation Commission can determine salaries for positions, not individuals; therefore, salaries of all legislators must be uniform except that supplemental salaries may be allowed for specific offices such as Speaker of the House.

9. CONSTITUTIONAL LAW—STATES—GOVERNOR—ACTING GOVERNOR—LIEUTENANT GOVERNOR—SALARIES—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION.

The constitution requires the Legislature to provide that the salary of any state officer while acting as Governor shall be equal to that of the Governor; therefore, the determination by the State Officers Compensation Commission that the salary of the Lieutenant Governor when officially acting as Governor shall be the same as for the Governor is beyond the authority of the commission (Const 1963, art 5, § 27).

10. STATES—GOVERNOR—STATE AIRPLANES—STATE FACILITIES—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION—EXPENSE ALLOWANCES.

The State Officers Compensation Commission cannot grant the Governor jurisdiction over the use of state airplanes or other state facilities; the existence of this jurisdiction has no relevance to expense allowances.

11. STATES—GOVERNOR—PERSONAL SECURITY—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION—EXPENSE ALLOWANCES.

Provision for the personal security of the Governor is part of the general operation of the office and the appropriation for this is determined by the Legislature; the State Officers Compensation Commission when determining the personal expense allowance for the office of Governor cannot consider whether necessary personal security is provided.

12. CONSTITUTIONAL LAW—STATES—SUPREME COURT—COURT STAFF—APPROPRIATIONS—SALARIES.

The constitution grants to the Supreme Court the authority to appoint, remove, and have general supervision of its staff, the control of the preparation of its budget recommendations, and the control of the expenditures of moneys appropriated for any

purpose pertaining to the operation of the Court or the performance of activities of its staff, except the salaries of the justices (Const 1963, art 6, § 7).

13. STATES—OFFICERS—SALARIES—STATE OFFICERS COMPENSATION COMMISSION—PENDING LEGISLATION.

The State Officers Compensation Commission when determining salaries cannot consider pension legislation which has not yet been enacted into law.

14. STATES—LEGISLATORS—DISTRICT OFFICES—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION—EXPENSE ALLOWANCES.

It is beyond the authority of the State Officers Compensation Commission to determine whether district offices for state legislators are operated and paid for by the state; however, the commission may determine that expense allowances it has granted may not be utilized for the operation of a district office.

15. STATES—LEGISLATORS—POSTAGE ALLOWANCES—CAMPAIGN MAIL—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION.

The State Officers Compensation Commission cannot grant, deny, or consider whether state legislators are provided a postage allowance for campaign mail.

16. STATES—OFFICERS—SALARY ADJUSTMENTS—STATE OFFICERS COMPENSATION COMMISSION—AUTHORITY OF COMMISSION.

It is beyond the authority of the State Officers Compensation Commission to adopt salary adjustment policies pertaining to changes in fringe benefit values which apply to each and every specific salary determination.

17. CONSTITUTIONAL LAW—STATES—SUPREME COURT JUSTICES—SALARY DECREASES.

The constitution requires uniformity of the salaries of Justices of the Supreme Court and prohibits decreases during a term of office except and only to the extent of a general salary reduction in all other branches of government (Const 1963, art 6, § 18).

Original action in the Court of Appeals. Submitted November 26, 1974, at Lansing. (Docket No. 21918.) Decided December 23, 1974.

Complaint for mandamus by David Holmes and

Stanley Novak against the State Officers Compensation Commission to compel redeterminations of salaries and expense allowances for state legislators. Redeterminations ordered prior to release of opinion. Upon a failure of the commission to make timely redeterminations, salaries established by the Court.

*Craig & Farber* and *Elliard Crenshaw & Strong,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Solomen Bienefeld,* First Assistant Attorney General, and *John D. Pirich,* Assistant Attorney General, for defendant.

Before: LESINSKI, C. J., and V. J. BRENNAN and DANHOF, JJ.

PER CURIAM. Plaintiffs are state senators and they have filed a complaint for mandamus contending that the defendant State Officers Compensation Commission exceeded its authority in certain portions of the 1974 determinations transmitted on August 23, 1974 for filing pursuant to MCLA 15.216; MSA 3.255(56).

The State Officers Compensation Commission was created by constitutional amendment in 1968. Prior thereto, Const 1963, art 4, § 12 read:

"The compensation and expense allowances of the members of the legislature shall be determined by law. Changes in compensation or expense allowances shall become effective only when legislators commence their terms of office after a general election."

As amended pursuant to House Joint Resolution AAA and ratification at a special election on August 6, 1968, Const 1963, art 4, § 12 now reads:

"The state officers compensation commission is created which shall determine the salaries and expense allowances of the members of the legislature, the governor, the lieutenant governor and the justices of the supreme court. The commission shall consist of 7 members appointed by the governor. The commission shall determine the salaries and expense allowances of the members of the legislature, the governor, the lieutenant governor and the justices of the supreme court which determinations shall be the salaries and expense allowances unless the legislature by concurrent resolution adopted by 2/3 of the members elected to and serving in each house of the legislature reject them. The commission shall meet each 2 years for no more than 15 session days. The legislature shall implement this section by law."

1968 PA 357, effective September 20, 1968, being MCLA 15.211 *et seq.;* MSA 3.255(51) *et seq.,* was adopted to implement Const 1963, art 4, § 12 as amended. Sections 6 and 7 of 1968 PA 357 read:

"Sec. 6. The commission shall determine the salaries and expense allowance of the governor, lieutenant governor, the justices of the supreme court and the members of the legislature and file its determinations with the clerk of the house of representatives, the secretary of the senate and the director of the department of administration not later than December 1, of each even numbered year and shall furnish copies to the governor, the lieutenant governor, justices of the supreme court and members of the legislature.

"Sec. 7. The determinations of the commission shall be effective January 1 of the year following their filing and shall be the compensation and expense allowances of the governor, lieutenant governor, justices of the supreme court and members of the legislature unless the legislature, by concurrent resolution adopted by a 2/3 vote of the members elected to and serving prior to February 1 of the year following the filing of the determinations, rejects either the entire determinations or specific determinations for specific positions. In case

of rejection the existing salary and expense allowances shall prevail retroactive to January 1."

It is the constitutional provision and implementing statute that authorize the State Officers Compensation Commission to determine the salaries and expense allowances of the members of the Legislature, the Governor, the Lieutenant Governor and the Justices of the Supreme Court.

By an opinion dated January 5, 1972 the State Attorney General in response to a request from the chairman of the State Officers Compensation Commission advised the commission that the authority of the commission was limited to determining salaries and expense allowances, and did not include the authority to determine fringe benefits. The commission chairman was again advised by the State Attorney General on August 3, 1972 that the commission was powerless to provide or to establish new fringe benefits for the state officers and justices whose salaries and expenses are governed by Const 1963, art 4, § 12 as amended. However, in Part I of its 1974 determinations, the commission specifically rejected the Attorney General's legal opinion that its authority was limited to determining salaries and expense allowances, and stated its interpretation of its power as meaning it was authorized "to determine total compensation including fringe benefits".

This Court holds that the State Officers Compensation Commission erred in its interpretation of its authority as including the right to determine compensation including fringe benefits. We base this holding primarily on the language and history of Const 1963, art 4, § 12, as amended, quoted above.

The word "compensation" has been used historically in this state in constitutional provisions pertaining to remuneration of legislators. Const 1835,

art 4, § 18; Const 1850, art 4, § 15; Const 1908, art 5, § 9; and Const 1963, art 4, § 12 as originally adopted. Significantly, House Joint Resolution AAA continued the use of the word "compensation" until during considerations by the Senate the word "salaries" was substituted for the word "compensation". 1968 Senate Journal, Vol. II, p 1543.

According to defendant commission's legal counsel, the State Attorney General, at the time the amendment to Const 1963, art 4, § 12 was proposed and ratified, some members of the Legislature were receiving in addition to a salary and an expense allowance, hospital insurance, life insurance and retirement benefits. This Court finds the substitution of the word "salaries" for the word "compensation" persuasive on the matter of intent, especially when considered in the context that legislators were receiving fringe benefits at the time and that the word "compensation" was the word previously used in this state's constitutions. Therefore, we hold that the constitution limits the State Officers Compensation Commission's authority to determination of salaries and expense allowances. The use of the word "compensation" in § 7 of 1968 PA 357, quoted, *supra,* cannot increase the commission's authority to include determination of fringe benefits because it is elementary law that constitutional provisions are superior to statutory provisions. 1 Sands, Sutherland Statutory Construction (4th ed), § 2.01, p 13. To grant this authority to the commission by statute would be an unlawful delegation of legislative power under the doctrine of separation of powers. Const 1963, art 3, § 2.

However, it does not follow that the commission cannot consider the value of fringe benefits in deliberating on and arriving at specific determina-

tions of salaries of members of the Legislature, the Governor, the Lieutenant Governor and the Justices of the Supreme Court. On the contrary, we hold that fringe benefits such as insurance, pensions, and official residences, are sufficiently related to the subject of salaries to be relevant and, therefore, reasonable factors in the determination of salaries even though the commission lacks authority to establish the amount and type of fringe benefits.

Next, we discuss the commission's position on expense allowances as set forth in Part I of its 1974 determinations. Its interpretation of its constitutional power to determine expense allowances "to include any expenses paid for by the State for the conduct of an elected position for which expense allowances are determined by the commission, regardless of whether the commission has heretofore set determinations for such expenses" is erroneous. This Court holds that the term "expense allowances" as used in Const 1963, art 4, § 12 means normal reimbursable personal expenses such as food, lodging and travel costs incurred by an individual in carrying out the responsibilities of a state office. In determining expense allowances of a state official the commission may consider whether the state official has available to him a state-owned automobile or state-owned airplane since such fact might decrease the amount of travel allowance needed for the office, but the commission has no authority to grant or deny the use of a state-owned automobile or airplane. The term "expense allowances" as used in Const 1963, art 4, § 12 does not include facilities, office and staff expenses since those are not expenses personal to an officeholder. Facilities, office and staff expenses are not sufficiently related to personal

expenses to even be relevant in determining expense allowances, and therefore, the commission has no authority to consider those factors in establishing expense allowances. Likewise the commission cannot grant, deny, or consider expenses paid to state legislators as members of legislative committees, or expenses paid to legislators or other state officials on special assignments or missions. Further, the commission has no authority to grant or deny office, staff equipment and supplies to state officials. We do not read this portion of the constitution as granting the commission power to determine how, when, or if a branch of government will function.

Part III of the 1974 determinations of the State Officers Compensation Commission, entitled *Specific Determinations For Specific Positions* will now be considered *seriatim.*

Part III, Section A reads:

"A. *Specific Determination for the Office of Governor, Years 1975, 1976.*

1. *Salary*—$47,250 per annum.
2. *Expense Allowances*
    a. Reimbursable accountable allowance for costs incurred in carrying out the responsibilities of the office—maximum $18,000 per year.
    b. State automobile with chauffeur.
    c. Use of State airplane for official business and jurisdiction over its use by other State officials.
    d. Necessary personal security (cars, personnel, and equipment).
3. *Fringe Benefits*
    The following fringe benefits previously established were considered in determining the salary level of the Governor:
    a. Full-time use of Governor's mansion.
    b. Maintenance of Governor's mansion by Department of Administration.

    c. Use of Mackinac Island residence, and mainte-
       nance of same by the State.
There are no State paid pension or insurance provi-
sions."

Part III, Section A, 1, determines the Governor's salary as a sum certain without provision for adjustment and is within the authority of the commission.

Part III, Section A, 2, a, determines the maximum amount per year that is reimbursable for personal expenses incurred in carrying out the responsibilities of the office of Governor and is within the authority of the commission.

Part III, Section A, 2, b, purports to grant the Governor a state-owned automobile with chauffeur and is beyond the authority of the commission although it may consider whether the Governor has use of a state-owned automobile when determining the expense allowance for the office. The commission cannot consider whether the Governor has a chauffeur when determining the expense allowance for the office since that is not a reimbursable personal expense of the Governor.

Part III, Section A, 2, c, purports to grant the Governor a state-owned airplane for official business and jurisdiction over its use by other state officials and is beyond the authority of the commission although it may consider whether the Governor has use of a state-owned airplane when determining the expense allowance for the office. The commission cannot grant the Governor jurisdiction over the use of state airplanes or other state facilities by other state officials as this is an invasion of the powers of the separate branches of government which powers are determined by the state constitution and such a grant or denial has no relevance to expense allowances.

Part III, Section A, 2, d, purports to grant the Governor necessary personal security including cars, personnel, and equipment and is beyond the authority of the commission. Provision for the personal security of the Governor is part of the general operation of the office and the appropriation for same is determined by the Legislature. The commission cannot consider whether the Governor is provided with necessary personal security in determining his personal expense allowance for the office.

Part III, Section A, 3, a, b and c are fringe benefits relating to official residences which the commission considered in determining the salary for the Governor and are within the authority of the commission. The last sentence of Part III, Section A, 3, stating that there are no state paid pensions or insurance provisions for the Governor is ambiguous. If the commission meant that it considered the lack of such fringe benefits in determining the salary of the Governor, then it acted within its authority since such factors are reasonably related to its power to set salaries. If the commission meant it was making a specific determination that the office of governor could not have a state paid pension or insurance, then the commission exceeded its authority.

"B. *Specific Determination for the Office of Lieutenant Governor*
  1. *Salary*—$27,500 per annum.
        The salary of the Lt. Governor, when officially acting as Governor, shall be the same as for Governor, computed per diem.
  2. *Expense Allowances*
      a. Reimbursable, accountable allowance for costs incurred in carrying out the responsibilities of the office—maximum $3,500 per year.
      b. State automobile, no chauffeur.

    c. Security personnel, equipment, and chauffeur
       when officially acting as Governor.
  3. *Fringe Benefits*
    There are no State paid pension, insurance, resi-
    dence, or other fringe benefit provisions."

Part III, Section B, 1, determines the Lieutenant
Governor's salary as a sum certain without provi-
sion for adjustment and is within the authority of
the commission. The sentence following the deter-
mination of salary stating that the salary of the
Lieutenant Governor, when officially acting as
Governor, shall be the same as for Governor,
computed per diem, is beyond the authority of the
commission. Const 1963, art 5, § 27 requires the
Legislature to provide that the salary of any state
officer while acting as Governor shall be equal to
that of the Governor.

Part III, Section B, 2, a, determines the maxi-
mum amount per year that is reimbursable for
personal expenses incurred in carrying out the
responsibilities of the office of Lieutenant Gover-
nor and is within the authority of the commission.

Part III, B, 2, b, purports to grant the Lieuten-
ant Governor use of a state-owned automobile with
no chauffeur and is beyond the authority of the
commission although the commission may consider
whether the Lieutenant Governor has use of a
state-owned automobile in determining the per-
sonal expense allowance for the Lieutenant Gover-
nor. The commission cannot grant, deny or con-
sider whether the Lieutenant Governor has a
chauffeur in making its determination of the ex-
pense allowance for the office.

Part III, Section B, 2, c, purports to grant the
Lieutenant Governor security personnel, equip-
ment, and chauffeur when officially acting as Gov-
ernor and is beyond the authority of the commis-

sion. The commission cannot grant, deny or consider whether the Lieutenant Governor is provided with security personnel, equipment, and chauffeur when officially acting as Governor when the commission is determining the expense allowance for the office.

Part III, Section B, 3, relating to fringe benefits and stating that there are no state paid pension, insurance, residence, or other fringe benefit provisions is ambiguous. If the commission meant that it considered the lack of such fringe benefits in determining the salary of the Lieutenant Governor, then it acted within its authority. If the commission meant it was making a specific determination that the office of Lieutenant Governor could not have a state paid pension, insurance, residence, or other fringe benefits, then the commission exceeded its authority.

Part III, Section C reads:

"C. *Specific Determination for the Office of Supreme Court Justice, Years 1975, 1976*
   1. *Salary*—$43,500 per annum.
   2. *Expense Allowances*
      a. State automobile for state business, no chauffeur.
      b. Reimbursable, accountable allowance for costs incurred in carrying out the responsibilities of the office—maximum $1,500.
   3. *Fringe Benefits*
      The following fringe benefits previously established were considered by the Commission in determining salary level for Justices of the Supreme Court:
      a. Life insurance, $44,000, State contribution ninety percent of premium cost, annual cash value, $314. Options are available for family. Justices have an accidental death benefit of $50,000; estimated cash value, $6.00.

b. Health insurance, including spouse, State contributes ninety percent of premium cost, annual cash value, $797.

c. Retirement pension at fifty percent of salary age seventy with twelve years service, age sixty-five with sixteen years, or age sixty with twenty years. If Justices choose to join, they contribute seven percent of salary, employer the balance. Estimated average value of annual employer contribution $4,395.

There is currently a bill in the legislature to amend the Judges Retirement Act. The bill in its present form would change the eligibility to age 60 or over with 20 or more years service or age 65 or over with 12 or more years service. In addition, a maximum of 60% of salary at time of retirement would be granted."

Part III, Section C, 1, determines the salary for Supreme Court Justices as a sum certain without provision for adjustment and is within the authority of the commission.

Part III, Section C, 2, a, purports to grant Supreme Court Justices use of state-owned automobiles with no chauffeurs and is beyond the authority of the commission although the commission may consider whether Supreme Court Justices have use of state-owned automobiles when determining the expense allowance for the office of Supreme Court Justice. The commission cannot consider whether Supreme Court Justices have chauffeurs when making its determination of the expense allowance for the office. Const 1963, art 6, § 7 grants to the Supreme Court the authority to appoint, remove, and have general supervision of its staff. It also grants to the Supreme Court the control of the preparation of its budget recommendations and the expenditure of moneys appropriated for any purpose pertaining to the operation of

the Court or the performance of activities of its staff except the salaries of the justices.

We note that the commission's determination for use of state-owned automobiles would appear to vary from that of the Governor and Lieutenant Governor. The implication being that the Governor and Lieutenant Governor may use state-owned cars for personal use. We hold that it is beyond the power of the commission to grant any official the power to use a state-owned automobile for personal use; although it may consider it as an emolument of office and its value to the official, if the official has same for his personal use without the need to reimburse the state, in determining that official's salary and expenses. How the state motor-vehicle fleet and aeronautics fleet is to be used is determined by statute in the exercise of the legislative power.

Part III, Section C, 2, b, determines the maximum amount per year that is reimbursable for personal accountable expenses incurred in carrying out the responsibilities of the office of Supreme Court Justice and is within the authority of the commission except as in its application it may be in conflict with the provision of the Const 1963, art 6, § 7.

Part III, Section C, 3, a, b, and c, are fringe benefits which the commission considered in determining salaries for Supreme Court Justices and as considerations are within the authority of the commission. The last paragraph of Part III, C, 3, relating to pending pension legislation is a factor which the commission improperly considered in determining salaries for Supreme Court Justices since such legislation had not been enacted into law at the time the determinations were made.

Part III, Section D reads:

"D. *Specific Determination for Position of State Legislator*
  1. *Salary*—$19,000 per year, less $950 pension revision consideration. $18,050 for 1975 and $18,050 for 1976.
  2. *Expense Allowances*
     a. *Mileage allowance:* Legislators traveling in their personal automobile or by public conveyance can claim reimbursement at the rate of fifteen cents per mile for 1975 and sixteen cents for 1976 for not more than one round trip per week from their legal Michigan residence to the State Capitol building, while the legislature is in session.

        Mileage is to be computed via most direct route. With car pools, only owner of car can make claim. Trip must be made to make claim. Allowances are to be computed from convening date to sine die adjournment.
     b. *Food and Lodging Allowance:* Legislators can claim reimbursement up to $25 for 1975 and $26 for 1976 per session day for personally consumed meals and personally used lodging while in attendance at legislative sessions, up to a maximum of $3,300 for 1975 and $3,500 for 1976. Allowance is accountable. Rental or usage costs of legislator's residence do not qualify for allowance.
     c. If more than one round trip per week, as set forth in (a) above is made by a legislator, the legislator may claim reimbursement on the same eligibility and mileage allowance basis, but the sums so paid by the State for these extra trips shall be subtracted from the legislator's food and lodging allowance, thereby reducing the amount available for food and lodging to that legislator.
     d. No State automobile is provided, regardless of circumstances.
     e. No costs for operation of a district office are allowed.
     f. No postage allowance may be used for campaign mail.

3. *Fringe Benefits*

The following fringe benefits previously established were considered by the Commission in determining the salary level of the legislators:

a. Family health insurance including prescriptions —State contributes one hundred percent of premium cost. Annual cash value of State contribution varies from $359.52 to $902.52 depending on size of family covered.

b. Life insurance—Same as State group plan for classified employees; state contributes 100% of premium cost. Amount of insurance is for the members' basic annual salary adjusted to the next highest multiple of $1,000. ($19,000) Annual cash value is $158.68.

Legislators have an accidental death benefit of $50,000, estimated cash value is $6.00.

c. Pension—legislators contribute 4% of salary; the balance is the employer's liability. Eligible age 60, with 8 years service, 26% of salary; 3.75% for each additional year to a maximum of 60% of salary. Estimated average cash value is $2,317.62. This plan includes a provision for pension payment to survivors in the amount of ⅔ of qualified retirants' allowance.

d. Grants and Insurance Revolving Fund—Widows eligible to receive $1,000 per month up to 27 months (total is actually $28,800). Legislators who choose to participate in this plan contribute 1% of salary. To the present, this 1% contribution has been sufficient to meet the needs of the policy.

4. *Supplemental Salaries*

The supplemental salary for the Speaker of the House is continued at $5,000 per annum.

*The following salary adjustment policies pertaining to changes in fringe benefit values are made an integral part of each and every specific determination for each specific position:*

If the cost to the State for the pension, health and accident, or life insurance program of an officeholder increases during the 1975–76 pay period over what such

cost was for the 1973–74 period, and if such increase in cost results in an actual cash value benefit increase to the recipient, either through reduction in salary deductions or increase in cash values, or both, then the salary increases scheduled for that officeholder for 1975–76 are to be reduced by these increases in cash values to that recipient to the extent that they are paid for during that period by increased costs to the State. This policy does not apply to increases in costs to the State for existing benefits. This policy does not apply to changes in the legislative pension plan stipulated in Public Act 215 of July, 1974, or the judicial pension plan stipulated in Substitute House Bill 5295. Both of these plans have been taken into consideration in 1975 salaries. The cost to the state of any new fringe benefit programs implemented in 1975–76 is in like manner to be deducted from scheduled salary increases for the affected officeholder:

*Example*—If the legislative pension salary deduction is further reduced from five percent to three percent for 1975–76, two percent of the 1975–76 salary, less any amount of this figure that does not result in increased cost to the State, is to be deducted from the salary increase scheduled for 1975–76 for legislators contributing to the pension plan, provided pension plan benefits remain equal to what they were before the change in the salary deduction. If benefits decrease, the cash value of such reductions is deducted from the computation; if benefits increase, the cash value of such increases is added to the computation."

Part III, Section D, 1, purports to determine salaries of $19,000 per year for state legislators less $950 pension revision consideration, or $18,050 per year for the years 1975 and 1976. The deduction of $950 per year for pension revision is beyond the authority of the commission. The commission is authorized to determine salaries which this Court holds means a sum certain without provision for adjustment. Not all members of the Legislature are members of the Legislative Retire-

ment System, and to deduct $950 from a legislator's salary for a pension program to which the legislator does not belong would be patently unfair. To pay those legislators who do not belong to the retirement system $19,000 per year and those who do belong $18,050 per year results in different salaries for the same office. We hold that the commission's authority to determine salaries for members of the Legislature means it can determine salaries for positions, not individuals, and therefore salaries of all legislators must be uniform except that supplemental salaries may be allowed for specific offices in the Legislature such as Speaker of the House.

Part III, Section D, 2, a, b, and c, determine maximum mileage and food and lodging allowances per year that are reimbursable for costs incurred in carrying out the responsibilities of the office of state legislator and is within the authority of the commission.

Part III, Section D, 2, d, purports to deny a state legislator the right to use a state-owned automobile regardless of cirucmstances, and it is beyond the authority of the commission to grant or deny a state legislator the right to use a state-owned automobile, although the commission may consider whether legislators use state-owned automobiles in determining the expense allowance for the office.

Part III, Section D, 2, 3, purports to deny state legislators all costs for operation of a district office. It is beyond the authority of the commission to determine whether district offices for state legislators are operated and are paid for by the state. To the extent that the expense allowances herein granted to a state legislator are prohibited from being utilized for the operation of a district office, that determination is proper.

Part III, Section D, 2, f, purports to deny state legislators any postage allowance for campaign mail and is beyond the authority of the commission. The commission cannot grant, deny, or consider whether state legislators are provided a postage allowance for campaign mail.

Part III, Section D, 3, a, b, c, and d, are fringe benefits which the commission considered in determining the salary for state legislators and for purposes of consideration are within the authority of the commission.

Part III, Section D, 4, determines the supplemental salary for the office of Speaker of the House as a sum certain without provision for adjustment and is within the authority of the commission.

The "salary adjustment policies pertaining to changes in fringe benefit values" which purport to be an integral part of each and every specific determination for each specific position are beyond the authority of the commission. The policies purport to apply to "each and every specific determination for each specific position" regardless of the fact that some state officers elect not to participate in some of the fringe benefits available. Further, the "salary adjustment policies" are defective because they would reduce salaries during the next two years contingent upon certain factors which may or may not occur and fail to establish how or by whom the determination is to be made that the specified factors have occurred. Additionally, Const 1963, art 6, § 18 requires uniformity of salaries of Justices of the Supreme Court and prohibits decreases during a term of office "except and only to the extent of a general salary reduction in all other branches of government".

Since under MCLA 15.216, *supra,* the commis-

sion only had until December 1, 1974 to file its determinations, this cause was remanded to the commission with opinion to follow by order dated November 27, 1974 for a determination of the salaries of members of the state Legislature without consideration of improper deductions. It was further ordered that if the commission failed to determine the salaries of members of the Legislature and to file such determinations in accordance with MCLA 15.216 by not later than December 1, 1974, then the salaries of the Legislature shall be $19,000 per annum with a supplemental salary of $5,000 per annum for the office of Speaker of the House for the years 1975–76, as established by the commission prior to its application of improper deductions.

The order will issue.

No costs a public question.