507 A.2d 323

CONSUMER PARTY OF PENNSYLVANIA, et al., Appellants,

v.

COMMONWEALTH of Pennsylvania, et al., Appellees.

Supreme Court of Pennsylvania.

Argued Jan. 24, 1985.

Decided March 27, 1986.

160

Richard A. Ash, Philadelphia, for appellants.

C. Clark Hodgson, Jr., Philadelphia, for Com. of Pa.

Gregory R. Neuhauser, Deputy Atty. Gen., Harrisburg, for appellees.

Before NIX, C.J., LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.*

In this action the Consumer Party of Pennsylvania and several citizen-taxpayers ("appellants")[1] appeal from a final order of the Commonwealth Court which upheld the consti-

---

* This matter was reassigned to this writer.

1. Appellants are the Consumer Party of Pennsylvania, Lee Frissell, individually and as chairman of the Consumer Party, Lance Haver, Max Weiner, John Brickhouse, Bill Thorn, Sam Blancato, John Zingaro, Priscilla Thomas, and Jeff Goldsmith.

tutionality of the Public Official Compensation Law of 1983 ("Compensation Law"), Act of September 30, 1983, P.L. 160, No. 39, § 1 *et seq.*, 65 P.S. § 366.1 *et seq.* (Supp.1985). The Compensation Law had its genesis in Senate Bill 270 which was first introduced in the Senate on February 15, 1983 bearing the following title:

An act amending the act of August 9, 1955 (P.L. 323, No. 130), entitled 'an act relating to counties of the third, fourth, fifth, sixth, seventh and eighth classes; amending, revising, consolidating and changing the laws relating thereto' further providing for the filling of vacancies in certain circumstances.

After several considerations, Senate Bill 270 was passed by the Senate on April 18, 1983 and presented to the House on April 20, 1983, where, following amendments, it was passed on June 1, 1983. The House's amended version of Senate Bill 270 bore the same title as the original Senate Bill 270.

Upon reconsideration, the Senate refused to agree to the amendments made by the House and consequently, during July, 1983, both bodies sent representatives to a Committee of Conference ("Committee") on Senate Bill 270. The Committee submitted a report and amended version of Senate Bill 270 to the members of the House and the Senate on September 28, 1983. This amended version, however, bore a title substantially different from the original title. The new title read:

An act establishing salaries and compensation of certain public officials including justices and judges of Statewide courts, judges of courts of common pleas, judge of the Philadelphia Municipal Court, judges of the Philadelphia Traffic Court, district justices and the Governor, the Lieutenant Governor, the State Treasurer, the Auditor General, the Attorney General and certain other State officers and the salary and certain expenses of the members of the General Assembly; and repealing certain inconsistent acts.

On that same day, September 28, 1983, the Senate adopted the Committee's bill by a vote of 32 to 18 and the

House adopted it by a vote of 103 to 99. Governor Thornburgh signed the newly entitled Senate Bill 270 into law on September 30, 1983.

Thereafter appellants commenced an action in the Commonwealth Court against appellees [2] seeking a declaration that Sections 4 [3] and 5 [4] of the Compensation Law are

2. The defendants named were the Commonwealth of Pennsylvania; R. Budd Dwyer, Treasurer of the Commonwealth of Pennsylvania; Henry Hager, individually and as Trustee Ad Litem for the members of the Senate of the Commonwealth of Pennsylvania; the Senate of the Commonwealth of Pennsylvania; K. Leroy Irvis, individually and as Trustee Ad Litem for the members of the House of Representatives of the Commonwealth of Pennsylvania; and The House of Representatives of the Commonwealth of Pennsylvania.

3. Section 4. Members of the General Assembly.

 (a) Members salary, expense and mileage.—The salary of members of the General Assembly shall be $35,000 per annum and mileage to and from their homes at the rate of 20¢ per mile, circular, for each week a member was in actual attendance in session between their homes and the State Capitol and, except as provided herein, no other compensation shall be allowed whatsoever, except each member of the General Assembly shall receive an allowance for clerical assistance and other expenses incurred during his term in connection with the duties of his office in the sum of $7,500 annually; the salary to be payable in equal monthly installments the first day of the month, including the installment due December 1 of each even-numbered year except that the salaries of Senators elected at the General Election of 1982 during the remainder of their term shall be $25,000 per annum and such members shall receive in addition to the allowance for clerical assistance and other expenses, the expense allowance of $10,000 per annum.

4. Section 5. Additional expenses for members of the General Assembly.

 (a) Members expense allowance.—For the period commencing December 1, 1983 and ending November 30, 1984, members of the General Assembly shall receive, in addition to any allowance for clerical assistance and other expenses, an unvouchered expense allowance of $5,000 which shall be paid monthly on the first day of the month.

 (b) Senate officers expense allowance.—During the period commencing December 1, 1983 and ending November 30, 1984, the following officers of the Senate shall receive, in addition to any other allowance for clerical assistance and other expenses, an unvouchered expense allowance as follows: President pro tempore, $2,800; Majority Leader, $2,240; Minority Leader, $2,240; Majority Whip, $4,900; Minority Whip, $4,900; Majority Caucus Chairman, $1,760; Minority Caucus Chairman, $1,760; Appropriations Chairman, $6,360; Minority Caucus Secretary, $1,500; Minority Caucus

unconstitutional, an injunction against any disbursements under the law [5], and an order directing the recoupment of any payments theretofore made to members of the General Assembly pursuant to the law.[6] Appellants contended that the challenged sections of the Compensation Law violated various sections of Article III of the Pennsylvania Constitution.

The parties agreed to have the case resolved upon stipulated facts and cross-motions for summary judgment. On April 19, 1984, the Commonwealth Court *en banc* issued an opinion and order which sustained the General Assembly's preliminary objections in the nature of a demurrer that under Article II, § 15 of the Pennsylvania Constitution the Legislature and its leaders are immune from a suit where the challenge is to legislative activities during the passage of legislation. *Consumer Party of Pennsylvania v. Commonwealth of Pennsylvania*, 81 Pa.Cmwlth. 609, 475 A.2d 850 (1984). In addition, the Commonwealth Court granted the motion for summary judgment filed on behalf of the Commonwealth and the State Treasurer, holding that Sections 4 and 5 of the Compensation Law are constitutional.

Secretary, $1,500; Majority Policy Chairman, $1,500; Minority Policy Chairman, $1,500; Majority Caucus Administrator, $1,500; Minority Caucus Administrator, $1,500;

 (c) House officers expense allowance.—During the period commencing December 1, 1983 and ending November 30, 1984, the following officers of the House of Representatives shall receive, in addition to any other allowance for clerical assistance and other expenses, an unvouchered expense allowance as follows: Speaker of the House of Representatives, $2,800; Majority Leader, $2,240; Minority Leader, $2,240; Majority Whip, $4,900; Minority Whip, $4,900; Majority Caucus Chairman, $1,760; Minority Caucus Chairman, $1,760; Appropriations Chairman, $6,360; Minority Appropriations Chairman, $6,360; Majority Caucus Secretary, $1,500; Minority Caucus Secretary, $1,500; Majority Policy Chairman, $1,500; Minority Policy Chairman, $1,500; Majority Caucus Administrator, $1,500; Minority Caucus Administrator, $1,500.

5. The Commonwealth Court denied this request for an injunction ruling that appellants had failed to demonstrate that irreparable harm would result from a denial of this request.

6. A more accurate description of the claim sought to be brought against legislator-appellees would be a claim in assumpsit for moneys improperly disbursed.

Appellants appealed to this Court pursuant to 42 Pa.C.S. § 723(a) arguing that it was error for the Commonwealth Court to grant summary judgment in favor of appellees because the Compensation Law was enacted in violation of Article III, § 1 of the Pennsylvania Constitution and because the legislator's increase in their expense allowance, during their term of office, violates the Pennsylvania Constitution. Appellants also contend that the Commonwealth Court erroneously concluded that the Speech and Debate Clause, Article II, § 15, barred the present suit against the General Assembly. Appellees counter that appellants lack standing to maintain this action.

## I.

We must first address appellees' contention, not addressed below,[7] that appellants, as taxpayers, lack standing to challenge the constitutionality of the Compensation Law. Appellants allege that they will be harmed by the unconstitutional expenditures of millions of dollars as a result of the Compensation Law's increase in the legislator's salary and expense allowances.[8] On this point appellants attempt to rely upon a number of our earlier decisions which held that a taxpayer may seek to enjoin the wrongful or unlawful expenditure of public funds even though he is unable to establish any injury other than to his interest as a taxpayer. *See, e.g., Price v. Philadelphia Parking Authority,* 422 Pa. 317, 221 A.2d 138 (1966); *Mayer v. Hemphill,* 411 Pa. 1, 190 A.2d 444 (1963); *Smith v. Gallagher,* 408 Pa. 551, 185 A.2d 135 (1962); *Scudder v. Smith,* 331 Pa. 165, 200 A. 601 (1938); *Harris v. Philadelphia,* 299 Pa. 473, 149 A. 722

7. Although appellees raised the preliminary objection that all or some of the plaintiffs lacked standing to bring the claims asserted in the complaint, the Commonwealth Court did not address this issue, choosing instead to resolve the case on other grounds.

8. Additionally, Appellant Consumer Party alleges that it has standing because the additional payments to incumbent legislators seeking re-election will give those legislators more funding for their campaigns and thus an advantage over members of the Consumer Party. Appellant points out that presently no members of the Consumer Party serve in the legislature. Since we conclude that appellants have standing as taxpayers we do not address this alternative argument.

(1930); *Page v. King*, 285 Pa. 153, 131 A. 707 (1926). However, as appellees argue in their brief, this liberal approach to taxpayer standing was overruled by our decision in *Application of Biester ("Biester")*, 487 Pa. 438, 409 A.2d 848 (1979), which requires, generally, the establishment of an interest that surpasses the common interest of all taxpaying citizens. Nevertheless, because we find that this case falls within a narrow exception recognized in *Biester*, we hold that appellants, as taxpayers, have standing to maintain the instant action.

We begin our standing analysis by noting that *Biester* is the seminal case defining the parameters of taxpayer standing in this Commonwealth. In that case we stated as a general rule:

> The purpose of the requirement of standing is to protect against improper plaintiffs. K. Davis, *Administrative Law Text* § 22.04 (3rd ed. 1972). A plaintiff, to meet that requirement, must allege and prove an interest in the outcome of the suit which surpasses "the common interest of all citizens in procuring obedience to the law." *Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 281 (1975). To surpass the common interest, the interest is required to be, at least, substantial, direct, and immediate. *Wm. Penn, supra.*

*Id.*, 487 Pa. at 442–43, 409 A.2d at 851.

*See also Upper Bucks County Vocational-Technical School Education v. Upper Bucks County Vocational-Technical School Joint Committee*, 504 Pa. 418, 474 A.2d 1120 (1984). As noted above, *Biester* thus overruled a long line of cases which did not require the taxpayer to allege an injury distinct from that of the general public. In *Biester*, however, we carved out a narrow exception to the general rule and emphasized that certain cases exist in which the facts warrant the grant of standing to taxpayers where their interest arguably is not substantial, direct, and immediate. *Id.*, 487 Pa. at 444, 409 A.2d at 852. The relaxing of those interest requirements in certain cases where there is little causal connection between the action complained of

and the injury alleged is best explained by the basic policy considerations underlying taxpayer standing. These policy considerations were articulated in footnote five of *Biester:*

> The ultimate basis for granting standing to taxpayers must be sought outside the normal language of the courts. Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement. Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts.

> *Biester, supra*, 487 Pa. at 443 n. 5, 409 A.2d at 851 n. 5, *quoting* Note, *Taxpayers' Suits: A Survey and Summary*, 69 Yale L.J. 895, 904 (1960).

*See also Faden v. Philadelphia Housing Authority*, 424 Pa. 273, 278, 227 A.2d 619, 621–22 (1967) (the fundamental reason for granting taxpayer standing is simply that otherwise a large body of governmental activity would go unchallenged in the courts).

Thus we advocated in *Biester* a policy for granting standing where, although the degree of causal connection is small, judicial review otherwise would not occur. *Id.*, 487 Pa. at 445, 409 A.2d at 852. We noted that the possibility of the challenged legislation escaping review is most likely "when those directly and immediately affected by the complained of expenditures are beneficially affected as opposed to adversely affected." *Id.* Further, we stated that "[c]onsideration must be given to other factors such as, for example, the appropriateness of judicial relief, the availability of redress through other channels, or the existence of other persons better situated to assert the claim." *Id.*, 487 Pa. at 446, 409 A.2d at 852, *quoting Government of Guam ex rel. Camacho v. Bird*, 398 F.2d 314 (9th Cir.1968) (citations omitted).

■ To summarize, in *Biester* we held that a taxpayer seeking standing to sue must allege a substantial, direct, and immediate interest in the outcome of the suit unless the taxpayer can show:

1. the governmental action would otherwise go unchallenged;
2. those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action;
3. judicial relief is appropriate;
4. redress through other channels is unavailable; and
5. no other persons are better situated to assert the claim.

■ We believe the circumstances of the instant case establish the above five factors and therefore warrant the grant of standing to appellants under the narrow exception outlined in *Biester*. This case presents a prime example of governmental action which would otherwise go unchallenged because the very individuals who enacted the legislation are directly and beneficially affected and are thus not inclined to challenge the constitutionality of the legislation. Furthermore, judicial relief is appropriate since the determination of the constitutionality of an act is a function ultimately left to the courts. *Zemprelli v. Daniels*, 496 Pa. 247, 436 A.2d 1165 (1981); *Hertz Drivurself Stations, Inc. v. Siggins*, 359 Pa. 25, 58 A.2d 464 (1948); *Commonwealth v. Zasloff*, 338 Pa. 457, 13 A.2d 67 (1940); *Breinig v. Allegheny County*, 332 Pa. 474, 2 A.2d 842 (1938); *Dauphin County Grand Jury Investigating Proceedings (No. 2)*, 332 Pa. 342, 2 A.2d 802 (1938); *White's Appeal*, 287 Pa. 259, 134 A. 409 (1926); *Commonwealth v. Vrooman*, 164 Pa. 306, 30 A. 217 (1894); *Page v. Allen*, 58 Pa. 464 (1868); *Eakin v. Raub*, 12 S. & R. 330 (1825); *Moore v. Houston*, 3 S. & R. 169 (1812); *Emerick v. Harris*, 1 Binn. 416 (1808); *Respublica v. Duquet*, 2 Yeates 493 (1799). Moreover, here redress through other channels is unavailable. There is no administrative agency which can provide relief and the legislators themselves are unlikely to provide a meaningful

mechanism for redress. Lastly, there are no other persons better situated to assert the claim because all those who are directly and immediately affected by the Compensation Law are beneficially affected and have not brought, and will not bring a cause of action. Thus there are no possible plaintiffs who can assert a substantial, direct and immediate interest.

## II.

Having determined that appellants have standing to maintain this action, we now turn to the question of whether the Commonwealth Court correctly held that the legislator-appellees [9] are immune from suit under the Speech and Debate Clause of the Pennsylvania Constitution, Article II, Section 15.

Article II, section 15 of our Constitution provides:

The members of the General Assembly shall in all cases, except treason, felony, violation of their oath of office, and breach or surety of the peace, be privileged from arrest during their attendance at the sessions of their respective Houses and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place. Pa. Const. Art. II, § 15.

■ In *Consumer Education and Protective Association v. Nolan,* 470 Pa. 372, 368 A.2d 675 (1977), we determined that the Pennsylvania Speech and Debate Clause, like its federal counterpart,[10] should be broadly interpreted to protect legislators from judicial interference with their legitimate legislative activities, and that even where the activity questioned is not literally speech or debate, a court must determine whether it falls within the "legitimate legislative sphere." *Id.,* 470 Pa. at 382–83, 368 A.2d at 681. We

9. The legislator-appellees are The Senate of the Commonwealth of Pennsylvania; The House of Representatives of the Commonwealth of Pennsylvania; Henry Hager, President Pro Tempore of the Senate; and K. Leroy Irvis, Speaker of the House.

10. U.S. Const. Art. 1, § 6.

further reasoned in *Sweeney v. Tucker,* 473 Pa. 493, 375 A.2d 698 (1977), that although we are not bound by the cases interpreting the federal speech and debate clause, those cases provide guidance in formulating the policy considerations underlying the Pennsylvania Speech and Debate Clause. *Id.,* 473 Pa. at 504, n. 14 and accompanying text, 375 A.2d at 703 n. 14 and accompanying text. We set forth those federal policy considerations we deemed relevant to an analysis under the Pennsylvania Speech and Debate Clause:

Although the Speech or Debate Clause of the United States Constitution has its roots in English history, "it must be interpreted in light of the American Experience, and in the context of the American constitutional scheme of government." *United States v. Brewster,* 408 U.S. 501, 508, 92 S.Ct. 2531, 2535, 33 L.Ed.2d 507 (1972). The Supreme Court has stated that the Clause is designed to protect "the independence and integrity of the legislature." *United States v. Johnson,* 383 U.S. 169, 178, 86 S.Ct. 749, 754, 15 L.Ed.2d 681 (1966); accord, *Eastland v. United States Servicemen's Fund,* 421 U.S. 491, 501, 95 S.Ct. 1813, 1820, 44 L.Ed.2d 324 (1975); *Doe v. McMillan,* 412 U.S. 306, 311, 93 S.Ct. 2018, 2024, 36 L.Ed.2d 912 (1973); *Gravel v. United States,* 408 U.S. 606, 616, 92 S.Ct. 2614, 2622, 33 L.Ed.2d 583 (1972); *United States v. Brewster,* 408 U.S. at 507–08, 92 S.Ct. at 2535; *Tenney v. Brandhove,* 341 U.S. 367, 373–74, 71 S.Ct. 783, 786–87, 95 L.Ed. 1019 (1951). The legislative immunity created by the Clause "insures that legislators are free to represent the interests of their constituents without fear that they will be later called to task in the courts for that representation." *Powell v. McCormack,* 395 U.S. [486] at 503, 89 S.Ct. [1944] at 1954. The Speech or Debate Clause has been read broadly in order to effectuate its purposes. See *Eastland v. United States Servicemen's Fund, supra; Gravel v. United States, supra* (Clause applies to legislative aide for conduct which would be protected legislative act if performed by the legislator himself); *United States v. Johnson, supra; Tenney v. Brandhove,*

*supra; Kilbourn v. Thompson* [13 Otto 168], 103 U.S. 168, 26 L.Ed. 377 (1880). But *cf. Doe v. McMillan, supra* (conduct determined to be outside the legislative sphere); *Gravel v. United States, supra* (same); *United States v. Brewster, supra* (same). The Clause "prohibits inquiry into those things generally said or done in the House or Senate in the performance of official duties and into the motivation for those acts." *United States v. Brewster*, 408 U.S. at 512, 92 S.Ct. at 2537; accord, *Eastland v. United States Servicemen's Fund*, 421 U.S. at 501, 95 S.Ct. at 1980; *Doe v. McMillan*, 412 U.S. at 311, 93 S.Ct. at 2024; *Gravel v. United States*, 408 U.S. at 624, 92 S.Ct. at 2626; *Powell v. McCormack*, 395 U.S. at 502, 89 S.Ct. at 1954; *United States v. Johnson*, 383 U.S. at 179, 86 S.Ct. at 755; *Kilbourn v. Thompson*, 103 U.S. at 204. *Id.*, 473 Pa. at 504–06, 375 A.2d at 703–04 (footnote omitted).

■ Thus, in ascertaining whether the legislator-appellees are immune from suit in the instant case, we must determine whether their activities fall within the "legitimate legislative sphere" and whether such immunity is necessary to protect the independence and integrity of the legislature.

■ We believe that nothing is more basic to the independence and integrity of the legislature than its ability to pass legislation. Should we hold today that legislators can be held personally liable for disbursements under a duly enacted bill subsequently challenged as unconstitutional, it would indeed impede the ability of the legislators to represent the interests of their constituents because of the fear that they will be later called to task in the courts for that representation. *See Powell v. McCormack*, 395 U.S. 486, 504, 89 S.Ct. 1944, 1955 (1969); *Consumer Education and Protective Association v. Nolan, supra.* As noted by the Commonwealth Court, "[c]learly, nothing is more with the legitimate legislative sphere than the process leading up to and the passage of legislation." *Consumer Party of Pennsylvania v. Commonwealth, supra*, 81 Pa.Cmwlth. at 616, 475 A.2d at 853.

Appellants seek to distinguish this case by arguing that a claim for recoupment [11] does not fall within the "legitimate legislative sphere" since it has nothing to do with the passage of legislation. We find this attempted distinction to be without meaning in this context. Whether the suit against the legislator seeks damages or attempts to require recoupment from the legislator for his actions in the legislative process, it has the same inhibiting effect. As noted by the United States Supreme Court in *Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502, 95 S.Ct. 1813, 1820, 44 L.Ed.2d 324 (1975), the very core of the Speech and Debate Clause is the protection of "the integrity of the legislative process by insuring the independence of individual legislators." *See also United States v. Brewster*, 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). To permit Article III, section 15 to be effective in its purpose, the immunity of the legislators must be absolute as to their actions within the "legitimate legislative sphere." To accomplish this we must not only insulate the legislator against the results of litigation brought against him for acts in the discharge of the responsibilities of his office, but also relieve him of the responsibility of defending against such claims. *See Hutchinson v. Proxmire*, 443 U.S. 111, 123, 99 S.Ct. 2675, 2682, 61 L.Ed.2d 411 (1979); *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427, 18 L.Ed.2d 577 (1967). Thus, the preliminary objections were properly sustained.

## III.

■ We now must address the propriety of the grant of summary judgment in favor of the Commonwealth-appellees,[12] which had the effect of rejecting the claims that the Compensation Law was constitutionally defective. It is well established that an entry of summary judgment may

**11.** *See supra* n.6 for an accurate description of this claim.

**12.** The Commonwealth-appellees are the Commonwealth of Pennsylvania and R. Budd Dwyer, Treasurer of the Commonwealth of Pennsylvania, those appellees remaining after suit was dismissed against the legislator-appellees, *supra,* n.9.

be granted only in cases where the right is clear and free of doubt. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Johns v. Cheeseman*, 457 Pa. 414, 322 A.2d 648 (1974); *Kotwasinki v. Rasner*, 436 Pa. 32, 258 A.2d 865 (1969); *Hammermill Paper Co. v. Rust Engineering Co.*, 430 Pa. 365, 243 A.2d 389 (1968); *Gabster v. Mesaros*, 422 Pa. 116, 220 A.2d 639 (1966); *Evans v. Marks*, 421 Pa. 146, 218 A.2d 802 (1966); *Dutch Pantry, Inc. v. Shaffer*, 396 Pa. 102, 151 A.2d 621 (1959); *Adams v. Speckman*, 385 Pa. 308, 122 A.2d 685 (1956); *London v. Kinglsey*, 368 Pa. 109, 81 A.2d 870 (1951). Pennsylvania Rule of Civil Procedure 1035(b) provides that summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Here there are no factual disputes, and our only task is to determine whether, as a matter of law, the Compensation Law is constitutional.

■ As we recently stated in *Pennsylvania Liquor Control Board v. The Spa Athletic Club*, 506 Pa. 364, 485 A.2d 732 (1984):

The strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act have been so often stated as to now be axiomatic. Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution, and any doubts are to be resolved in favor of a finding of constitutionality.

*Id.*, 506 Pa. at 370, 485 A.2d at 735.

*See also James v. Southeastern Pennsylvania Transportation Authority*, 505 Pa. 137, 477 A.2d 1302 (1984); *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983); *In re Street*, 499 Pa. 26, 451 A.2d 427 (1982); *Snider v. Thornburgh*, 496 Pa. 159, 436 A.2d 593 (1981); *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 435 A.2d 419 (1981); *National Wood Preservers, Inc. v. Commonwealth, Department of Environmental Resources*, 489 Pa. 221, 414 A.2d 37 (1980); *Parker v. Children's Hospital of Philadelphia*, 483 Pa. 106, 394 A.2d 932 (1978); *Philadelphia v.*

*Dupuy,* 431 Pa. 276, 244 A.2d 741 (1968); *Pennsylvania Public Utility Commission v. Stiely,* 429 Pa. 614, 241 A.2d 74 (1968); *Heuchert v. State Harness Racing Commission,* 403 Pa. 440, 170 A.2d 332 (1961); *Prichard v. Willistown Township School District,* 394 Pa. 489, 147 A.2d 380 (1959); *Loomis v. Philadelphia School District Board of Education,* 376 Pa. 428, 103 A.2d 769 (1954). This presumption of constitutionality is further mandated by our Statutory Construction Act, 1 Pa.C.S. § 1922(3) (the legislature does not intend to violate the Constitution). With our standard of review in mind, we now address the specific constitutional challenges raised in this case.

## A.

Appellants first argue that the Compensation Law was passed in violation of Article III, section 1 of the Pennsylvania Constitution, which states:

> No law shall be passed except by bill, and no bill *shall be so altered or amended, on its passage through either House,* as to change its original purpose. (emphasis added)

Pa. Const. Art. III, § 1.

Appellants premise this argument upon the fact that the purpose of the original version of Senate Bill 270 was different from that of the version submitted by the Committee. Under the stipulated facts it is clear that there was a change in the original purpose of the bill between its initial passage in the House and Senate and the version submitted by the Committee for reconsideration by both the House and Senate. The question as to whether this procedure offends Article III, section 1, depends upon the intendment of the emphasized language. Before beginning an analysis of the merits of this issue, we must first address the Attorney General's argument that the question is not justiciable.

To preserve the delicate balance critical to a proper functioning of a tripartite system of government, this Court has exercised restraint to avoid an intrusion upon the pre-

rogatives of a sister branch of government. Pursuant to this principle we have rejected challenges to the procedural regularity of the passage of legislation that has been passed and approved in due form on the grounds that the matter is non-justiciable. Our abstention in this area has been articulated by employing the enrolled bill doctrine,[13] *see, e.g., Mikell v. School District of Philadelphia,* 359 Pa. 113, 58 A.2d 339 (1948); *Kilgore v. Magee,* 85 Pa. 401, 412 (1877); *Speer v. Plank-Road Co.,* 22 Pa. 376, 378 (1853); or a determination that a provision is directory and not mandatory. *See, e.g., Mikell v. School District of Philadelphia, supra,* 359 Pa. at 123–124, 58 A.2d at 344:

> The legal distinction between directory and mandatory laws is as applicable to fundamental as it is to statutory law: *Armstrong v. King,* 281 Pa. 207, 216, 126 A. 263. The provision in question could not reasonably be deemed other than directory.

> . . . .

> A failure of the legislature to follow a directory provision of the Constitution, respecting the introduction and passage of legislation, does not present a justiciable question. . . . *the subject is not within the pale of judicial inquiry.* (Emphasis in original text)

Nevertheless, whatever theory is employed, the legitimacy of the abstention is dependent upon the situation presented. The countervailing concern is our mandate to insure that government functions within the bounds of constitutional prescription. *See Stander v. Kelley,* 433 Pa. 406, 250 A.2d 474, *appeal dismissed sub nom. Lindsay v. Kelly,* 395 U.S. 827, 89 S.Ct. 2130, 23 L.Ed.2d 738 (1969); *Collins v. Martin,* 290 Pa. 388, 139 A. 122 (1927). We may not abdicate this responsibility under the guise of our

---

**13.** In *Kilgore v. Magee,* 85 Pa. 401, 412 (1877) we stated: ". . . when a law has been passed and approved and certified in due form, it is no part of the duty of the judiciary to go behind the law as duly certified to inquire into the observance of form in its passage. . . . The presumption in favor of regularity is essential to the peace and order of the state."

deference to a co-equal branch of government. While it is appropriate to give due deference to a co-equal branch of government as long as it is functioning within constitutional constraints, it would be a serious dereliction on our part to deliberately ignore a clear constitutional violation.

Article III was adopted to correct the evil of unwise, improvident and corrupt legislation which had become rampant at the time of its passage. A leading commentator has said of that period:

> The Pennsylvania Constitution of 1874 is the longest and the most detailed of the four fundamental documents under which the Commonwealth has been governed. It was drafted in an atmosphere of extreme distrust of the legislative body and of fear of the growing power of corporations, especially of the great railroad corporations. It was the product of a convention whose prevailing mood was one of reform—....
>
> R. Branning, *Pennsylvania Constitutional Development* (1960).

Section 1 of Article III, as well as the other provisions adopted in 1874 to prevent legislative corruption, have served well in achieving that objective. To adopt a blanket doctrine of abstention as suggested by the Attorney General, a position to some extent supported by early case law,[14] would erode the safeguard that has been erected and invite the evils that the Constitution of 1874 was designed to eradicate:

> [T]he courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of a constitution. Constitutions do not usually undertake to prescribe

---

**14.** During that same period this Court did hold other enactments invalid for failing to conform to the procedural safeguards of Article III. *Provident Life & Trust Co. v. Hammond,* 230 Pa. 407, 79 A. 628 (1911) (violation of Art. III, section 3 providing that "no bill shall be passed containing more than one subject, which shall be clearly expressed in its title...."); *Beckert v. City of Allegheny,* 85 Pa. 191 (1877) (failure to express in the title of the proposed bill the purposes for which it was enacted) *Dorsey's Appeal, 72 Pa. 192* (1872) (subject matter not clearly expressed in title).

mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised.

J. Cooley, *Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union,* (5th Ed.1880) at 93.

■ In making the judgment as to the propriety of abstention we must distinguish between challenges to the legislative wisdom and challenges asserting an abuse of legislative power.

When the Constitution clearly sets forth the manner in which something shall be done, that procedure must be followed to the exclusion of all others, including a procedure which the legislature may prefer; ....

*School Districts of Deer Lakes and Allegheny v. Kane,* 463 Pa. 554, 564, 345 A.2d 658, 663 (1975) (footnote omitted).

*See also Zemprelli v. Daniels,* 496 Pa. 247, 257, 436 A.2d 1165, 1170 (1981); *Commonwealth ex rel. Specter v. Martin,* 426 Pa. 102, 117, 232 A.2d 729, 737 (1967); *Daly v. Hemphill,* 411 Pa. 263, 191 A.2d 835 (1963); *Provident Life and Trust Company v. Hammond,* 230 Pa. 407, 79 A. 628 (1911); *Chalfant v. Edwards,* 173 Pa. 246, 33 A. 1048 (1896). The language of Article III, section 1 as well as the circumstances surrounding its adoption clearly reflects its mandatory quality. It was not the intention of this provision to merely establish general guidelines but rather it was intended to articulate a mandatory directive relating to the manner in which the General Assembly would be required to pass legislation.

This conclusion is further supported by the purpose sought to be achieved by Article III, section 1. In discussing Article III, section 1 we noted:

The purpose of the constitutional requirements relating to the enactment of laws was to put the members of the Assembly and others interested on notice ... so they might vote on it with circumspection.

*Scudder v. Smith, supra,* 331 Pa. at 170–71, 200 A. at 604.

We are living in a high pressure, complex society. It is imperative that those who are charged with the responsibility of making the laws that govern us must at the very least be required to employ reflective judgment in the discharge of that duty. Ultimately, it is the moral responsibility of the individual legislator to fulfill that commitment. However, the people speaking through their Constitution have mandated a procedure to provide each legislator the opportunity to properly perform that obligation. That directive is mandatory and not precatory and the judicial branch cannot ignore a clear violation because of a false sense of deference to the prerogatives of a sister branch of government.

■ We agree with the Attorney General that we must not inquire into every allegation of procedural impropriety in the passage of legislation. However, where the facts are agreed upon and the question presented is whether or not a violation of a mandatory constitutional provision has occurred, it is not only appropriate to provide judicial intervention, and if warranted a judicial remedy, we are mandated to do no less. In this case where the facts are stipulated we agree with appellants that judicial scrutiny is required. However, for the reasons that follow, we find that Article III, section 1 has not been violated in this instance.[15]

**15.** In this context it is interesting to note that although appellants below specifically alleged a violation of Article III, section 4 (every bill shall be considered on three different days in each House), such a claim was not presented in this appeal. Although, appellants make reference to Article III, section 4 in their argument in support of a violation of Article III, section 1, we are not requested to find a violation of Article III, section 4. As has been frequently noted, it is not appropriate for appellate courts to consider claims that have not been raised or that have been abandoned. *See, e.g., Estep v. Estep,* 508 Pa. 623, 500 A.2d 418 (1985); *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984); *In re: Duncan Trust,* 480 Pa. 608, 391 A.2d 1051 (1978); *Coleman v. Board of Education of School District of Philadelphia,* 477 Pa. 414, 383 A.2d 1275 (1978); *Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975). We therefore need not consider the propriety of the instant mode of passage under Article III, section 4.

The practice of sending legislation to a conference committee is by its nature designed to reach a consensus. 1 N. Singer, *Sutherland Statutory Construction* § 11.08 (Sands 4th ed. 1985), *quoting* F. Horack, *Legislation* (1940) 220. It is therefore to be expected that the legislation that emerges from such a process may materially differ from the bills sent to the Committee for consideration. To unduly restrict this process would inhibit the democratic process in its traditional method of reaching accord and would unnecessarily encumber the heart of the legislative process, which is to obtain a consensus. Here there was no change in the bill's purpose after it left the Committee and that object was clearly stated in the new title. Indeed, the parties stipulate that the purpose did not change after the bill left the Committee and while it was presented for final passage before both houses. As noted by the Commonwealth Court:

> The Consumer Party does not allege that any members were deceived as to the contents of the bill, making them unable to vote on it with circumspection. There is no submission by the Consumer Party that any part of the measure was secret.
>
> *Consumer Party of Pennsylvania v. Commonwealth, supra,* 81 Pa.Cmwlth. at 618, 475 A.2d at 854.

 The expansive interpretation urged by appellants would suggest that any material change in a piece of legislation during its passage would cause it to be constitutionally suspect. Such an interpretation would be incompatible with the traditional legislative process. We have said that the purpose sought to be achieved by Article III, section 1 was to put the members of the General Assembly and others interested on notice so that they may act with circumspection. *Scudder v. Smith, supra.* Here the bill in final form, with a title that clearly stated its contents, was presented to each house for its consideration and adoption. Under these circumstances there is no basis for sustaining a challenge under Article III, section 1.

■ Appellants in their brief make the bald assertion that the procedure employed deprived "others interested" of notice "and opportunity to be heard by their representatives" and prevented the members of the Assembly from voting with "circumspection." Brief for Appellants at 18. The facts do not support this contention. As noted, the title and content of the legislation in final form were in no way deceptive. We will not assume that the majority of the members in each house voting in favor of this legislation did not fully understand this piece of legislation. Nor does the record reflect that any of the members voting against the bill did so because they were denied the opportunity of considering the measure before its passage. Moreover, any other interested parties were clearly on notice of the purpose of the legislation. Implicitly, appellants are seeking to extend the language of Article III, section 1 to provide for a sufficient time frame during consideration of the measure in its ultimate form for communication between the constituency and the legislator before a vote is taken. There is nothing in the language of Article III, section 1 that would support such an interpretation. This distortion of the *Scudder* language is expressly rejected. The pivotal factor in *Scudder* was the deceptive nomenclature. Here the element of deception is absent; the measure was clearly stated and its purpose obvious.[16]

### B.

■ We next address appellants challenge to the constitutionality of the expense allowance established in section 5 of the Compensation Law. In their complaint and in their

---

**16.** The thrust of Article III, section 1 is to assure that the legislation and its title clearly convey its purpose and that it is placed before each body in that form, before final passage. All who read the bill as submitted by Committee would understand its purpose.

Appellants' argument goes beyond the clarity of the measure and the absence of deception. It focuses upon the time frame allowed for the constituency of a legislator to respond to a proposed piece of legislation. As we previously noted, Article III, section 4, which deals with the consideration of bills, was not raised. See note 15, *supra.* We will not incorporate the requirements of another section of Article III into the mandate of section 1.

motion for summary judgment appellants alleged that the Compensation Law violated Article III, section 27 of the Pennsylvania Constitution, which provides:

No law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment.

Pa. Const. Art. III, § 27.

That assertion of a patent violation of Article III, § 27 is erroneous. This Court has held that Article III, section 27 (then numbered "13") "does not apply to the members of the Legislature since their compensation is dealt with in a separate part of the Constitution, namely, Art. II, sec. 8." *Snyder v. Barber,* 378 Pa. 377, 380, 106 A.2d 410, 411 (1954). As we explained in *Snyder,* the purpose of Article III, section 27 is to prevent the legislature from exerting political pressure upon incumbents during their term of office. *Id.,* 378 Pa. at 380–81, 106 A.2d at 411–12. This holding, however, was ignored by the Commonwealth Court majority, which addressed only the question of an alleged violation of Article III, section 27.

 In the brief filed in this Court, appellants now allege that the Compensation Law violates Article II, section 8, which provides:

The members of the General Assembly shall receive such salary and mileage for regular and special sessions as shall be fixed by law, and no other compensation whatever, whether for service upon committee or otherwise. No member of either House shall during the term for which he may have been elected, receive any increase of salary, or mileage, under any law passed during such term.

Pa. Const. Art. II, § 8.

Appellants state in their brief that they "changed" their pleadings to allege a violation of Article II, section 8 in their summary judgment papers. Brief for Appellants at 3 n. 1, 29 n. 14. There is no evidence in the record, however, that they sought to amend their complaint or their motion for summary judgment. Thus the issue is not properly before

the Court. *See, e.g., City of Pittsburgh v. Pennsylvania Department of Transportation,* 490 Pa. 264, 416 A.2d 461 (1980); *Bucci v. R.J. Reynolds Tobacco Co.,* 439 Pa. 302, 268 A.2d 88 (1970); *Capecci v. Liberty Corporation,* 406 Pa. 197, 176 A.2d 664 (1962); *Snyder v. Barber, supra; Namy v. Black,* 367 Pa. 523, 80 A.2d 744 (1951).

In any event, an attempt to amend the complaint would be fruitless. No purpose would therefore be served in permitting amendment at this stage of the proceedings. *See Carlino v. Whitpain Investors,* 499 Pa. 498, 453 A.2d 1385 (1982); *Nationwide Mutual Insurance Co. v. Barbera,* 443 Pa. 93, 277 A.2d 821 (1971). Article II, section 8 by its own terms prohibits only increases in "salary" or "mileage" during the term in which the law providing for such an increase is passed, while section 5 of the Compensation Act provides for an "unvouchered expense allowance." The canons of statutory interpretation require that the words of an enactment be given their plain meaning. 1 Pa.C.S. § 1903(a); *Philadelphia Housing Authority v. Commonwealth, Pennsylvania Labor Relations Board,* 508 Pa. 576, 499 A.2d 294 (1985); *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982); *Commonwealth v. College,* 497 Pa. 71, 439 A.2d 107 (1981); *In re: Estate of Baker,* 496 Pa. 577, 437 A.2d 1191 (1981); *Commonwealth v. Mumma,* 489 Pa. 547, 414 A.2d 1026 (1980); *Stegmaier Estate,* 424 Pa. 4, 225 A.2d 566 (1967); *Davis v. Sulcowe,* 416 Pa. 138, 205 A.2d 89 (1964). In addition, as stated above, it is to be presumed that the legislature does not intend to violate the Constitution.

The basis of appellant's argument is that the increased expense allowance during the legislative term provided for in the Compensation Act is additional "salary." This argument ignores the clear distinction between salary and expense allowances. "Salary" has been defined as "a fixed payment at regular intervals for services, especially when clerical or professional." Webster's New World Dictionary (2d Coll. ed. 1982). We have long recognized that salary is compensation for services performed. *E.g., Sheryl*

*Records, Inc. v. The Cyrkle,* 431 Pa. 299, 245 A.2d 454 (1968); *Hamberger v. Marcus,* 157 Pa. 133, 27 A. 681 (1893); *Commonwealth ex rel. Wolfe v. Butler,* 99 Pa. 535 (1882). In contrast, an expense allowance is an amount furnished to pay for expenses incurred in the performance of those services. *Ex parte Alabama Senate v. Zeigler,* 466 So.2d 914 (Alabama 1985); *Gunter v. Beasley,* 414 So.2d 41 (Alabama 1982); *Porter v. City of Riverside,* 261 Cal. App.2d 832, 68 Cal.Rptr. 313 (1968); *Eberle v. Nielson,* 78 Idaho 572, 306 P.2d 1083 (1957); *Holmes v. State Officers Compensation Commission,* 57 Mich.App. 255, 226 N.W.2d 90 (1974); *Verry v. Trenbeath,* 148 N.W.2d 567 (N.D.1967); *In Re Advisory Opinion to House of Representatives,* 485 A.2d 550 (R.I.1984). An expense allowance for legislators has been provided for by statute since 1956. *See* Act of June 1, 1956, P.L. 1959, No. 657, § 14. Moreover, an augmentation of the expense allowance during term is hardly without precedent. The General Assembly has periodically increased the allowance to be received during its existing term. *See* Act of April 28, 1961, P.L. 168, § 1; Act of July 9, 1965, P.L. 195, § 1; Act of June 16, 1971, P.L. 157 No. 8, § 1; Act of October 25, 1979, P.L. 235, No. 75, § 3.

Where a voucher procedure is used, the employee must initially sustain the expense and is reimbursed after submitting vouchers establishing the precise amounts expended. Such a system presents possible disadvantages for both employer and employee. The employer must become involved in complicated bookkeeping in processing vouchers and issuing reimbursement checks. The employee, on the other hand, is forced to outlay his own funds for expenses. There may be a considerable time lag between the date the expense is incurred and the date reimbursement is actually made. In addition, the employee must devote a portion of his time to bookkeeping in order to maintain an accurate record of expenses. This may detract from the services the employee performs.[17]

17. The fact that the employee may be required to account for these expenses for federal income taxes, I.R.C. § 274(d), in no way under-

A system which provides for unvouchered expense allowances largely avoids such disadvantages. The employer determines the employee's anticipated experiences over a period of time and fixes the allowance in the appropriate amount. The employee receives the allowance in advance and uses the funds as needed to pay his expenses. The time and expense involved in bookkeeping is eliminated and the employee is able to devote his full attention to his duties. The employee's expenses may exceed the allowance for some coverage periods and fall below that amount in others. As long as the expense allowance fixed is reasonably related to actual expenses, the lack of mathematical precision inherent in such a system does not present a problem.

■■■ Appellant also challenges the constitutionality of section 5 on the ground that the expense allowance is unreasonable. In essence, their argument is that the allowance is in reality a veiled salary increase and thus violative of Article II, section 8. Appellants offer no basis for the conclusion that the expense allowance is not needed and will not be used to pay for the legitimate expenses of the members of the General Assembly. As we previously outlined, the use of expense allowances has long been a tradition in the legislature. Instead appellants argue that those legislators should bear the burden of proving that the expense allowance is reasonable. We disagree with that novel assertion.

■■■ As we stated above, a party challenging the constitutionality of an act of the General Assembly bears a heavy burden of proof, and legislation will not be declared unconstitutional unless it clearly, palpably and plainly violates the

cuts the force of this argument. Where the accounting is required by the employer, then it is appropriate for the time spent in this regard to be compensated by the employer. Where the accounting is required of the employee for the filing of his or her personal taxes, the obligation is the personal responsibility of the employee and must be conducted on the employee's personal time.

Constitution. *See, e.g., Commonwealth v. Mikulan, supra; In re Street, supra; National Wood Preservers, Inc. v. Commonwealth, Department of Environmental Resources, supra; Philadelphia v. Dupuy, supra; Pennsylvania Public Utility Commission, supra; Prichard v. Willistown Township School District, supra.* Here appellants utterly failed to make any showing that the expense allowance is a sham. This additional argument is therefore meritless.[18]

Accordingly, the order of the Commonwealth Court is affirmed.

HUTCHINSON, J., joins in this opinion and files a concurring opinion in which PAPADAKOS, J., joins.

HUTCHINSON, Justice, concurring.

I join the majority opinion, but write separately to express my view that were the issue of compliance with the public notice procedures of Section 4 of Article III of the Pennsylvania Constitution squarely before us, its requirement that "Every bill shall be considered on three different days in each House" would apply to legislative amendments

---

**18.** Appellants also allege a violation of Article III, section 13 of the Pennsylvania Constitution, which provides:

> A member who has a personal or private interest in any measure or bill proposed or pending before the General Assembly shall disclose the fact to the House of which he is a member, and shall not vote thereon.

Pa. Const. Art. III, § 13.

Appellants argue that in voting for S.B. 270 the members of the General Assembly impermissibly voted on a bill in which they had a personal interest. This contention is absurd. Article III, section 24 of our state Constitution provides that "[n]o money shall be paid out of the treasury, except on appropriations made by law . . . ." Pa. Const. Art. III. § 24. Pursuant to Article II, section 1, the legislative power is vested in the General Assembly. If appellants' theory were correct, the expense allowances of the members of the General Assembly could never have been established, let alone increased. Such an interpretation of Article III, section 13 is manifestly unreasonable. By requiring disclosure of a "personal or private interest," Article III, section 13 makes clear that its prohibition relates to the type of interest of which other members would not be generally aware.

made by a conference committee when the amendments involve a subject totally foreign to the bill which has been sent to conference and would pose a difficult issue of justiciability.

The permissible scope of amendments to a bill has always been extremely broad and the freedom to compromise in conference is a *sine qua non* of the legislative process. Essentially, however, the legislature has adhered to the requirement that all amendments be germane. For the legislature to abandon such a requirement could in some circumstances raise issues which have elsewhere been accepted as exceptions to the "enrolled bill" doctrine.[1] *See* R.E. Woodside *Pennsylvania Constitutional Law* (1985) at 356.

That doctrine is of inestimable importance to the separation of powers which underlies our tripartite government and its protection of our liberties. It would be unfortunate if courts, which have an obligation to see that the principles of the Constitution apply to the disposition of concrete cases presented to them,[2] were compelled to qualify the doctrine to meet that obligation. While the three day rule of Article III, Section 4, gives the public a minimal opportunity to make its views known before the enactment of legislation, the legislature has great freedom to amend the bills before it. Considering its unfettered conference committees and the broad legislative rules of germaneness, the legislature can easily avoid any judicial interference with the "enrolled bill" doctrine and I would respectfully urge it to do so.

PAPADAKOS, J., joins in this concurring opinion.

1. The history of the "enrolled bill" doctrine in Pennsylvania is set forth in *Velasquez v. Depuy*, 46 Pa. D & C.2d 587, 90 Dauphin 217 (1969), citing, *inter alia, Mikell v. Philadelphia School District*, 359 Pa. 113, 58 A.2d 339 (1948), *Kilgore v. Magee*, 85 Pa. 401 (1877), *Speer v. Plank-Road Co.*, 22 Pa. 376 (1853).

2. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60.