616 A.2d 1064

Lois GLEIM, Arland Wagonhurst, Pamela Monismith, Raymond Bailey, Jake Hodge, and Geraldine Smith, individually and on Behalf of all Others Similarly Situated, Appellants,

v.

Howard O. BEAR, Robert H. Shearer and Jay H. McBride, Township Supervisors of North Middleton Township, and J.P. Mascaro & Sons, Inc. t/d/b/a Solid Waste Services, Inc.

Commonwealth Court of Pennsylvania.

Argued Sept. 18, 1992.

Decided Oct. 26, 1992.

Petition for Allowance of Appeal Denied April 6, 1993.

Arthur T. McDermott, for appellants.

James D. Bogar, for appellee, North Middleton Tp. Bd. of Supervisors.

Albert A. DeGennaro, for appellee, J.P. Mascaro & Sons.

Before COLINS and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Appellants, citizens of North Middleton Township, appeal from the order of the Court of Common Pleas of Cumberland County that sustained the preliminary objections of the Township Supervisors of North Middleton Township and J.P. Mascara & Sons, Inc. (Appellees). We affirm in part and reverse in part and remand.

On July 28, 1988, the Pennsylvania Legislature enacted the Municipal Waste Planning, Recycling and Waste Reduction Act (Act 101), Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.-101–4000.1904. Act 101 requires municipalities to have a recycling program. In order to implement the requirements of Act 101, North Middleton Township enacted the North Middleton Township Solid Waste and Recycling Ordinance, Ordinance 91–1 (Ordinance). Pursuant to the Ordinance,

Township officials sought bids from municipal trash haulers for the removal of municipal waste and recyclable materials. The Township received three bids, accepting the lowest bid of J.P. Mascaro & Sons, Inc. (Mascaro). Mascaro contracted with the Township Board of Supervisors (Board) to be the exclusive trash hauler for the Township. The contract also provided that every dwelling in the Township must use Mascaro's services and that the *citizens pay Mascaro directly* $41.60 per quarter, regardless of the amount of refuse the household or dwelling unit generates.[1]

Appellants filed a complaint in equity, requesting rescission of the contract between the Board and Mascaro. Appellants claim that the Board failed to award the contract to the lowest *responsible* bidder because Mascaro allegedly filed an inaccurate questionnaire during the bidding process. The complaint does not challenge the payment of $41.60 per quarter to Mascaro as being improper or excessive. Appellants also claimed that Mascaro violated Act 101 and material and substantive terms of the contract by: 1) mixing recyclable materials and refuse; 2) not collecting refuse and recyclable materials in a neat and workmen like manner; 3) missing service calls; 4) failing to provide for Township logo on contractor-provided polycarts; and 5) billing for service in advance, rather than in arrears.

Appellees filed preliminary objections to the complaint, asserting that: 1) Appellants failed to exhaust statutory remedies pursuant to Pa.R.C.P. No. 1509(b); 2) the complaint did not conform to law or rule of court because the contract and/or questionnaire referred to was not attached;[2] 3) the complaint failed to state facts constituting a cause of action pursuant to Pa.R.C.P. No. 1017(b)(4); 4) Appellants lacked standing to

---

1. The Ordinance also requires the citizens to pay the hauler directly, Article III, Section 10 and Article IV, Section 1, and also provides for penalties for violations of the Ordinance, which include not only fines, but possible jail sentences.

2. Appellees also objected to Appellants' failure to attach the Ordinance. Although the trial court did not specifically discuss this objection, an ordinance, which is an official act, need not be attached to a complaint. *See* Pa.R.C.P. No. 1019(d).

seek rescission of the contract; and 5) the trial court lacked jurisdiction to hear the complaint.

The trial court sustained the preliminary objections, holding that Appellants did not have standing to rescind the contract as taxpayers or as third-party beneficiaries to the contract. While the trial court acknowledged that the right to rescind may be expressly or impliedly created in third persons, Appellants did not have such a right. Furthermore, the trial court held that Section 1711 of Act 101, 53 P.S. § 4000.1711, gives citizens aggrieved by such contracts, a statutory remedy over which the Environmental Hearing Board (EHB) has exclusive jurisdiction.

On appeal,[3] Appellants argue that they have standing to request rescission of the contract, and in this case of first impression, we hold that the Appellants do have standing to challenge the propriety of this contract.

Section 304 of Act 101, 53 P.S. § 4000.304, sets forth the responsibilities of municipalities to effectuate recycling.[4]

---

**3.** Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. 2 Pa.C.S. § 704.

**4.** Section 304 of Act 101 sets forth:

(a) **Responsibility of other municipalities.**—Each municipality other than a county shall have the power and its duty shall be to assure the proper and adequate transportation, collection and storage of municipal, ... and to adopt and implement programs for the collection and recycling of municipal waste or source-separated recyclable materials as provided in this act.

(b) **Ordinances.**—

(1) In carrying out its duties under this section, a municipality other than a county may adopt resolutions, ordinances, ... for the recycling, transportation, storage and collection of municipal wastes, ... which shall not be less stringent than, and not in violation of or inconsistent with, the provisions and purposes of the Solid Waste Management Act, this act and the regulations promulgated pursuant thereto.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

(c) **Contracting of responsibility.**—A municipality other than a county may contract with any person to carry out its duties for the

While the Board had the authority to contract [5] with Mascaro for recycling services, the funding of such contract is limited by Section 802 of the Township Code, 53 P.S. § 65802, which states:

(a) Each township shall have the power to make, to authorize, and to ratify, *expenditures for lawful purposes from funds available* therefor, by borrowing within legal limitations: Provided, That all contracts or purchases in excess of ten thousand dollars, except those hereinafter mentioned, shall not be made except with and from the lowest responsible bidder.

\*  \*  \*  \*  \*  \*

(b) The amount of the contract shall in all cases, whether of straight sale price, conditional sale, bailment lease, or otherwise, be the entire amount which the *township pays to the successful bidder* or his assigns in order to obtain the services or property, or both, and shall not be construed to mean only the amount which is paid to acquire title or to receive any other particular benefit or benefits of the whole bargain.

(Emphasis added). Furthermore, Section 702 of the Township Code, 53 P.S. § 65702, also dictates the "expenditure of funds" and does not authorize a municipality to transfer to its citizens the obligation to pay a private contractor as did the Ordinance.

recycling, transportation, collection and storage of municipal waste....

\*  \*  \*  \*  \*  \*

(e) **Term and renewals of certain contracts.**—The governing body of a municipality other than a county shall have the power to, and may, enter into contracts having an initial term of five years with optional renewal periods of up to five years with persons responsible for the collection or transportation of municipal waste generated within the municipality.

5. Section 801 of The Second Class Township Code (Township Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65801 provides:

Each township may make contracts for lawful purposes and for the purpose of carrying into execution the provisions of this act and the laws of the Commonwealth.

The corporate powers of townships of the second class shall be exercised by the township supervisors. *Where no specific authority is given for the expenditures* incident to the exercise of any power hereinafter conferred, or where no specific fund is designated from which such expenditures shall be made, *appropriations for such expenditures shall be made only from the general township fund.* In addition to the duties imposed upon them by section 516 hereof, they shall have power—

\*      \*      \*      \*      \*      \*

Further, 53 P.S. § 65708 allows the Township:

To regulate or prohibit the dumping or otherwise depositing of ashes, garbage, rubbish and other refuse materials within the township. To prohibit accumulations of ashes, garbage, rubbish and other refuse materials upon private property, including *the imposition and collection of reasonable fees and charges for the collection, removal and disposal thereof.* They also have power to—

(1) Collect, remove and dispose of or to provide, by contract or otherwise, for the collection, removal and disposal, by incineration, land fill or other methods of ashes, garbage, rubbish and other refuse materials and to prescribe penalties for the enforcement thereof.

(Emphasis added).

Appellants argue that they have standing as third-party beneficiaries to challenge the propriety of the contract, rather than as taxpayers. However, we hold that Appellants improperly concede that because "public funds were not expended," they cannot challenge the Board's actions as taxpayers. Because the Board can only contract to expend public funds, *see* previous discussion of statutory law, these funds, albeit paid from citizen to private contractor, are, no less, public funds.[6]

The trial court found that Appellants lacked standing to request rescission because they did not have a "right or

6. Because Appellants did not raise the issue of whether the Board had the authority to enter into the contract which transferred the obligation to pay to the Township's citizens, we will not address that issue here.

interest in cancelling the instrument." (Trial court opinion, 4). However, here, where the only consideration which makes the contract binding comes directly from the citizens, Appellants must be allowed to challenge the Board's actions. As Appellants aptly argue, "what if we refuse to pay?"

A municipality cannot have unbridled discretion to enter into a contract and then transfer the burden to pay to the citizens, without the citizens having the opportunity to question the propriety of such contract. The Board must be accountable in some way; otherwise, a Board could enter into an illegal contract, transfer the burden of paying to third parties through legislation and never have their actions scrutinized.

Because we hold that the contractual duty imposed upon the taxpayers by the Township to pay Mascaro *directly* for trash and recycling service is tantamount to the expenditure of public funds, it is, therefore, appropriate for us to consider the question of taxpayer standing to challenge municipal expenditure of public funds in this manner.

In *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986), the Pennsylvania Supreme Court analyzed the issue of whether citizens can challenge the wrongful or unlawful expenditure of public funds, even though the taxpayer's only injury is to his interest as a taxpayer. In *Consumer Party*, the Court began its analysis with the seminal case of *Application of Biester*, 487 Pa. 438, 409 A.2d 848 (1979), which defined the general parameters of taxpayer standing:

> The purpose of the requirement of standing is to protect against improper plaintiffs. K. Davis, *Administrative Law Text* § 22.04 (3d ed. 1972). A plaintiff, to meet that requirement, must allege and prove an interest in the outcome of the suit which surpasses 'the common interest of all citizens in procuring obedience to the law.' *Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269, 281 (1975). To surpass the common interest is required to be, at least, substantial, direct and immediate. *Wm. Penn, supra.*

510 Pa. at 168, 507 A.2d at 328, citing 487 Pa. at 442–43, 409 A.2d at 851.

*Biester* went on to carve out an exception to the rule that the injury must pass that of other taxpayers because of basic policy considerations underlying taxpayer standing.

The ultimate basis for granting standing to taxpayers must be sought outside the normal language of the courts. Taxpayers' litigation seems designed to enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement. Such litigation allows the courts, within the framework of traditional notions of 'standing,' to add to the controls over public officials inherent in the elective process the judicial scrutiny of the statutory and constitutional validity of their acts.

487 Pa. at 443 n. 5, 409 A.2d at 851 n. 5 (quoting Note, *Taxpayers' Suits: A Survey and Summary,* 69 Yale L.J. 895, 904 (1960)).[7]

Thus, *Biester* held that a taxpayer seeking standing to sue must allege a substantial, direct, and immediate interest in the outcome of the suit, unless it is shown that:

1.  the government action would otherwise go unchallenged;

2.  those directly and immediately affected by the complained of expenditures are beneficially affected and not inclined to challenge the action [i.e., the Township, here];

3.  judicial relief is appropriate;

4.  redress through other channels is unavailable; and

5.  no other persons are better situated to assert the claim.

510 Pa. at 170, 507 A.2d at 329. Appellants obviously meet the requirements stated in *Biester.*

The trial court also held rescission was not a proper remedy in this case because *the Township,* as contracting party, did not allege any breach or attempt to rescind the contract and

---

7.  *See also Faden v. Philadelphia Housing Authority,* 424 Pa. 273, 227 A.2d 619 (1967), which held that the fundamental reason for granting taxpayer standing is simply that otherwise a large body of governmental activity would go unchallenged in the courts.

therefore, Appellants, as non-contracting parties, could not request rescission.

Appellants as taxpayers have an interest in public funds. *Frame v. Felix,* 167 Pa. 47, 31 A. 375 (1895). Historically, taxpayers have had the right to restrain the unlawful award of a public contract. *Page v. King,* 285 Pa. 153, 131 A. 707 (1926). The allegation that a public authority committed an abuse of discretion, i.e. in not awarding the contract to the lowest *responsible* bidder, is actionable. *Zurenda v. Commonwealth,* 46 Pa.Commonwealth Ct. 67, 405 A.2d 1124 (1979). While principles of municipal law forbid the substitution of judicial discretion for administrative discretion, *Blumenschein v. Pittsburgh Housing Authority,* 379 Pa. 566, 109 A.2d 331 (1954), when the law has been misinterpreted, courts must intervene. *See American Totalisator Co., Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980). Therefore, because we hold that Appellants have standing as taxpayers, rescission is a proper remedy.

Accordingly, we reverse the trial court's order sustaining Appellees' preliminary objections on standing and appropriateness of rescission and remand for proceedings consistent with this opinion. We affirm the trial court's sustaining preliminary objections on the basis that violations of Act 101 have a statutory remedy and are under the EHB's exclusive jurisdiction.

## ORDER

AND NOW, this 26th day of October, 1992, the order of the Court of Common Pleas of Cumberland County is hereby reversed on the issues of standing and appropriateness of rescission and is remanded for proceedings on the issue of the lowest responsible bidder consistent with this opinion. The order is affirmed insofar as alleged violations of the Municipal Waste Planning, Recycling and Waste Reduction Act have a statutory remedy and are within the Environmental Hearing Board's exclusive jurisdiction.

Jurisdiction relinquished.